· No. 35,542

In the Matter of the Application for a Writ of Habeas Corpus of
EDWARD ABLES, Alias Edward Able, *Petitioner*, v. MILTON F.
AMRINE, Warden of the Kansas State Penitentiary, *Respondent.*

(126 P. 2d 231)

Opinion filed June 6, 1942.

*Edward Ables* was on the briefs *pro se.*

*Jay Kyle,* assistant attorney general, argued the cause, and *Jay S. Parker,*
attorney general, was on the briefs for the respondent.

The opinion of the court was delivered by

DAWSON, C. J.: This is an original proceeding in habeas corpus.
Petitioner alleges that on November 25, 1937, he was arrested in
Emporia (Lyon county) on the request of authorities in Reno
county, and returned to the latter county on a warrant charging him
with forgery in the second degree. Thereafter, on December 11,
1937, petitioner was brought into the Reno county district court
where the following proceedings were had as shown by the journal
entry, sentence and commitment, pursuant to which petitioner is
presently incarcerated in the state penitentiary:

"IN THE DISTRICT COURT OF RENO COUNTY, KANSAS
    State of Kansas, *Plaintiff,*
          *vs.*          No. 3,882
    Edward Ables, *Defendant.*
        JOURNAL ENTRY, SENTENCE AND COMMITMENT

"Be It Remembered, That on this 11th day of December, 1937, the same
being an adjourned day of the September, 1937, term of said court, this cause
came on regularly for trial, plaintiff present by Wesley E. Brown, county at-
torney, and defendant present in person and by his attorney, [None]. The
case being called for trial, both parties announced themselves ready.

"THEREUPON, The defendant being duly arraigned, enters his plea of guilty
to the charge of second-degree forgery as charged in the information filed in

this case, and as defined by section 21-608 of the Revised Statutes of Kansas for 1935. Thereupon, the defendant is asked by the court if he has any legal cause to show why sentence and judgment of the court should not be pronounced against him, and replying in the negative the court finds the defendant, Edward Ables, guilty of second-degree forgery, as charged in the information filed in this case and as defined in section 21-608 of the Revised Statutes of Kansas for 1935. Thereupon the court being advised by competent evidence of three prior felony convictions of the defendant herein. Wherefore, the court finds defendant shall be sentenced under the habitual criminal act.

"It is Therefore, by the court, decreed, ordered and adjudged that the said defendant, Edward Ables, be confined in the Kansas State Penitentiary, located at Lansing, Kan., until discharged therefrom as by law provided, and that he pay the costs of this action, taxed at $13.20.

"The sheriff of Reno county, Kansas, is hereby ordered to take the said defendant, Edward Ables, and deliver him to the warden of the Kansas State Penitentiary, located at Lansing, Kansas, and to be confined therein for a term of life or until discharged therefrom according to law.

o. k.                                        J. G. Somers,
                              *Judge of the Ninth Judicial District.*"

On January 24, 1942, petitioner filed in this court a typewritten paper of ten pages, which he designated "Petitioner's Brief," but which we construed as sufficient to serve as an application for a writ of habeas corpus, and directed the warden to plead thereto. Thereafter the attorney general on the warden's behalf filed an answer and return denying the allegations of the application, alleging that petitioner was lawfully held in the warden's custody pursuant to the judgment and sentence of the district court of Reno county, and setting up a copy of the Reno county judgment roll as shown above.

Later, on March 7, 1942, petitioner filed a formal application, in substantial accord with the allegations of his brief filed on January 24. The particular grounds upon which petitioner bases his right to the writ are these:

"Your petitioner alleges that the journal entry and commitment is illegal and unlawful and without lawful force for the following reasons, viz.:

"(1)

"The records will show that the right to counsel and appeasement of constitutional rights was flagrantly denied in violation of the 14th amendment and procured a conviction in violation of the due process of law clause therein.

"(2)

"The records do not show any evidence or showing of previous convictions and the court was without jurisdiction, as the enhancement of punishment was based upon uncertified statements and not by pertinent records of said convictions and that the court has taken unlawful jurisdiction of the petitioner, in violation of said habitual act.

"(3)

"The records show that the defendant was unlawfully convicted for the crime of forgery, 2d degree; under section 21-608, a commitment issued for violation thereof, same being void.

. . . . . . . . . . . .

(Signed)    EDWARD ABELS, Petitioner per se."

Following the filing of the warden's answer and return, petitioner filed a reply which denied generally and specifically the matters pleaded by the warden. The reply also pleaded certain conclusions of law, and argued some matters which were not included in the application for the writ.

Passing Point No. 1 for the time being, as it will require a critical examination of petitioner's evidence adduced in its support, as well as the evidence to the contrary, Point No. 2 is that the records do not show any evidence of previous convictions which would justify his being sentenced as an habitual criminal. The record of the criminal trial is not here for review. If petitioner was erroneously sentenced as an habitual criminal on insufficient evidence that error could only be corrected in the trial court or by appeal. It cannot be reached by habeas corpus in an independent proceeding.

Point No. 3 seems to be a conclusion of law. The record does not show petitioner's unlawful conviction. It merely shows that he pleaded guilty, and neither directly nor otherwise is there a challenge of the accuracy of the pertinent recitals in the journal entry of judgment.

Turning now to Point No. 1, it is alleged that the record will show that petitioner's right to counsel was flagrantly denied. But the record shows nothing of the sort. (*Garrison v. Amrine*, post, p. 509, syl. ¶ 2, 126 P. 2d 228.) In his brief (or application) of January 24, 1942, it is said:

"Petitioner contends and shows that the petitioner never entered any plea, but asked for counsel to represent him, all of which the court replied: 'This court does not think you need the assistance of counsel in this matter.'"

In support of this averment petitioner submits an affidavit of one John R. Prime, who swears that he was confined to jail in Reno county at the time petitioner was similarly confined, and—

"Furthermore, I, John R. Prime, was present at the trial of said Edward Ables and I personally saw and heard Edward Ables request the assistance of counsel from the district court of Reno county and saw and heard the said court deny to the said Edward Ables the service and assistance of counsel in the criminal action for which he is now confined."

Mrs. John R. Prime has made a similar affidavit touching the alleged remark of the presiding judge.

Counter affidavits are submitted. The presiding judge of the district court of Reno county, who served in that capacity for twelve years, deposed, in part, thus:

"This affiant, after four and one-half years have elapsed, has no personal recollection of this occasion, but he does know the procedure that was followed in every case where a plea of guilty was entered in the twelve years that he occupied the bench.

"First, the defendant was asked either by the county attorney or if he failed to inquire by this affiant as judge, whether or not he had a lawyer. If the answer was in the affirmative or even qualifiedly so, that lawyer was summoned and was present during the plea and sentence. If the answer was negative, nothing was done, unless the defendant expressed a wish, however faint, that he be represented, in which case and in every such case, a lawyer was appointed by the court and proceedings were halted until that lawyer appeared, interviewed the defendant, and announced that he was ready to proceed.

"In the case of recidivist, as Ables appears to be, after a plea of guilty to the crime with which he stood charged, the court was informed by the county attorney or assistant county attorney, of the prior convictions that the defendant had had. . . .

"The next step after hearing the record of former convictions and after the prisoner had admitted the truth of the record was this question, asked without variation and in every case:

" 'Have you anything to say as to why sentence should not be passed upon you.'

"Occasionally a prisoner did have something to say. Whether or not Ables had anything to say, this affiant cannot remember, but even at that stage had he intimated that he desired to consult a lawyer he would have been given that opportunity and proceedings stayed until that had been done. Again this affiant would remember had the petitioner herein made any protest against the proceedings, his treatment, the severity of the sentence about to be imposed or anything remotely concerned with his legal rights, because again with one or two exceptions, those who did speak at that time were asking for mercy, or regretting their act, but never complaining about the treatment they had received at any time since their arrest. . . . Had the petitioner herein, Ables, asked or even intimated that he desired counsel, a lawyer would have been appointed right then, and this affiant knows that no such request nor intimation was made as no lawyer was appointed."

The deputy county attorney of Reno county who was in charge of the prosecution at petitioner's trial in Reno county makes an affidavit that on November 26, 1937, in the office of the county attorney, the petitioner made a voluntary sworn statement before a notary, in the presence of the affiant, the county attorney and one J. Richards Hunter, touching the criminal offense to which he later pleaded guilty on December 11, and that—

"Affiant further states that he has no recollection of the said Edward Ables requesting this affiant, or any other officer, for counsel, and verily believes that no request for counsel was ever made."

Petitioner's voluntary sworn statement is submitted as an exhibit in the warden's answer and return. In brief it recites that petitioner was twenty-eight years old (in 1937), that he had previously been in trouble with the law. Excerpts from that statement read:

"Q. What's your record? A. I have been in the penitentiary three times.
"Q. Where? A. Michigan.
"Q. What for? A. Michigan for larceny of an automobile.
"Q. Where in Missouri? A. Jefferson City.
"Q. What was that for? A. Supposed to be trying to haul away a safe.

"Q. Did they convict you for that? A. Yes, sir.
"Q. What in Oklahoma? A. For attempted burglary.
"Q. Were you incarcerated at McAlester or Grant? A. McAlester.

"Q. How long did you have to serve down there? A. A year.
"Q. How long did you serve in Michigan? A. Five years.

"Q. And about three or four years in Missouri? A. Twenty-one months down there."

The statement goes at length into details of admitted thefts, pilferings, burglaries and forgeries in which petitioner and John Prime had been engaged in Reno county shortly prior to his arrest, and out of those narrated misdeeds the state was content to carve but one criminal charge, and to which petitioner pleaded guilty.

Attached, also, to the warden's answer and return is a report of the Federal Bureau of Investigation, which shows that petitioner has heretofore served prison terms, viz.: one year in Wisconsin, some time in Colorado, three to five years in Michigan, one year in Kentucky and one year in Oklahoma, together with various other arrests on criminal charges in Illinois and elsewhere.

This criminal record is competent evidence on the matter of credence to be given to the petitioner's allegation in his application that the presiding judge said, "This court does not think you need the assistance of counsel in this matter." The question whether petitioner was denied the assistance of counsel in his criminal trial in Reno county is one of disputed fact, and the burden of proof is on the petitioner. We do not think petitioner has sustained that burden. His own testimony is entitled to no credence, in view of the indisputable fact that for years he has pursued a career of crime in keep-

ing with his character. Touching the affidavit of John R. Prime, his affidavit says he was in jail about the time of petitioner's trial—and by the inferences fairly deducible from petitioner's sworn statement Prime was measurably associated with petitioner in the latter's series of crimes in Reno county which culminated in his arrest and prosecution in the autumn of 1937. We attach no credence to Prime's affidavit. And as to Mrs. Prime's affidavit, we think that under all the circumstances, and including the affidavits of the district judge and the deputy county attorney, it is not entitled to such weight and credence as to maintain the burden of proof which rested on the petitioner.

In petitioner's reply brief he urged various matters which, if at all meritorious, could only have been redressed by appeal. As we have often said, habeas corpus is not a substitute for an appeal.

It follows that petitioner is not entitled to be released from imprisonment, and judgment is therefore entered in the warden's behalf.