No. 36,820

Evangelyne Wilcox, *Appellant,* v. Earl Fisher and Hazel Fisher, *Appellees.*

(180 P. 2d 283)

Karl Miller, judge. Opinion filed May 3, 1947.

*George Barrett,* of Pratt, argued the cause and *V. M. McElroy,* of Greensburg, was with him on the briefs for the appellant.

*Steve W. Church,* of Greensburg, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

Burch, J.: The appeal in this case presents the problem, whether a natural mother, by habeas corpus, can acquire possession and control of her minor children after they have been lawfully adopted by others. The district court ruled that the adoption proceedings were not subject to collateral attack and that the allegations of the petition presented a case wherein the juvenile court had exclusive

original jurisdiction and sustained a motion to quash the writ upon the conclusion that the district court did not have jurisdiction of the controversy. The petitioner asserts in this court, in substance, that the controlling question is the welfare of the children and that the district court had jurisdiction. The appeal is from rulings upon the pleadings.

Examination of the petition discloses that the petitioner is the natural mother of two children, one of whom was born October 3, 1931, and the other May 12, 1934. In May of 1936 the petitioner was granted a decree of divorce and in such action the court awarded her the custody of the minors. Sometime thereafter the children were adopted by the petitioner's mother and father and they are named as respondents in the case. No assertion is made in the petition that the adoption proceedings were irregular or invalid in any manner. The only question presented relative to the adoption proceedings arises by reason of allegations reading as follows:

". . . That on said day [the day the adoption decree was entered], in said court, [the said respondents] promised and agreed with your petitioner that the care, custody and control of said children would be relinquished to her at such time as she should be able to provide a home for them. That ever since that time the above-named children have been in the care, custody and control of their adoptive parents, and are not permitted to leave said home and reside with your petitioner, in conformity to said arrangement, although your petitioner is ready, willing and able to provide a home for them."

Counsel for the respondents moved to strike out the allegations in the petition relative to the change of custody agreement and the court sustained the motion on the theory that the allegations were in the nature of a collateral attack upon the adoption proceedings in the probate court.

The petition further alleges that the children have never been permitted to visit with the petitioner outside of their present home; that she has requested that they be permitted to spend vacations with her and has made adequate and suitable arrangements and preparation for their comfort and pleasure; that they are not permitted to engage in school activities beyond strict scholastic requirements or permitted to attend social gatherings of any normal and proper kind for boys of their age; that they are not permitted to play and are allowed no playmates. The petition continues by alleging that the children are not permitted to read or enjoy books

or magazines; that frequently the children have suffered severe and unwarranted beatings without cause or provocation; that they have never received any demonstration of love or affection from their adoptive parents but are treated in a cruel and inhuman manner; that the respondents have justified the treatment given the children under the cloak and name of religious training; that as a result of the treatment, the children are fearful, emotionally unstable and unable to perform the work required of them in school and that they will not develop into normal, well-adjusted citizens. The closing allegations of the petition are to the effect that the petitioner has provided at all times to the best of her ability, clothing and maintenance for the children; has visited with them whenever possible; and has bestowed upon them the normal affection of a mother; that the children have been taught by the respondents that their mother is an inconsiderate and sinful person, all of which is untrue; but notwithstanding such teachings, the children are anxious to make their home with their mother. The petition concludes with a prayer requesting that the writ be issued and that upon consideration of the cause the petitioner be granted care, custody and possession of the children.

An order granting the writ was issued commanding the respondents to appear and bring the children before the court. Four days after the writ was issued the respondents appeared by filing a motion to strike certain allegations from the petition. Upon consideration of the motion, it was agreed between counsel for the respective parties that the motion to strike should be enlarged to include a motion to quash the writ upon the grounds that the petition did not state facts sufficient to constitute a cause of action and that the court did not have jurisdiction of the subject of the action. Following hearing and argument upon the enlarged motion, the district court held that the petition showed upon its face that the minors were legally adopted by the respondents; that the petitioner had voluntarily relinquished and released all of her right to the care, custody or control of said minors and that by reason of the adoption the respondents had the full, complete and sole right to the care, custody and control of the children. The court further held that the sole question to be decided under the allegations of the petition was whether said minors were being or had been mistreated and abused to the extent that a proper court, with jurisdiction, should make some order relative to their custody; that such a ques-

tion rested in the original jurisdiction of the juvenile court and that, therefore, the motion to quash the writ and the demurrer to the petition should be sustained. The specifications of error are, in substance, that the court erred in sustaining the motion to strike, in ruling that the petitioner did not have a legal right to maintain the action, in holding that the district court did not have jurisdiction, and in sustaining the motion to quash.

1. We will give consideration first to the question whether the adoption proceedings are subject to collateral attack. The petition does not disclose the exact date when the final decree of adoption was entered by the probate court. It is not contended, however, that any controversy existed between the parties at the time of the adoption proceedings or that the petitioner was not then present or that she did not consent to the order of the adoption. There is an intimation in the petition that the adoption proceedings occurred soon after June, 1936. The petitioner's petition for a writ of habeas corpus was not filed until approximately ten years later, on September 16, 1946. The allegations hereinbefore set forth relative to the agreement on the part of the respondents to return the children to their mother assert, in substance, an attempt on her part to set aside in this proceeding a final order of adjudication by the probate court. In other words, she is attempting in her petition to say that a final decree of adoption, which she permitted to be entered unconditionally, should have been made conditional or interlocutory in its nature. The petitioner cannot do so. She concedes that the adoption proceedings were regular but contends that the court before which they were pending was not fully informed as to all of the facts. The failure to inform the court fully was a fatal omission on the part of the petitioner. She is estopped, by reason of her having silently misled the court, from asserting any fact attributable to her own neglect and certainly she cannot collaterally attack a decree she, in effect, previously approved. The general rule is well settled that a valid decree of adoption is not subject to collateral attack. Paragraph two of the syllabus in the case of *LeShure v. Zumalt*, 151 Kan. 737, 100 P. 2d 643, reads as follows:

"Jurisdiction of proceedings for the adoption of a child is vested in the probate court. Such proceedings are judicial in their nature, and are unassailable by collateral attack."

See, also, *Chamberlin v. Thorne*, 145 Kan. 663, 66 P. 2d 571. Consequently, consideration of this case must proceed upon the

conclusion that the respondents are the lawfully-decreed adoptive parents of the children.

2. The consequences of valid adoption proceedings are legally significant. In the case of *In re Hosford,* 107 Kan. 115, 190 Pac. 765, 11 A. L. R. 142, the opinion quotes with approval, from the case of *Younger v. Younger,* 106 Cal. 377, the following:

"'Where the adoption was regularly had, the status of the child was changed, and it no longer remained the child of the parties to the marriage, but became the child of another, and its relation to its natural parents ceased . . .'" (p. 119.)

Later, in the case of *Hardesty v. Hardesty,* 150 Kan. 271, 92 P. 2d 49, this court held:

"The record shows the requirements of the statute were complied with. The adoption having been regularly made, the status of the child was changed —it was no longer the child of its natural parents, but by virtue of the adoption became the child of the adoptive parents . . . To accomplish that end the adoption statutes were enacted. An order of adoption regularly made by the probate court and not appealed from (See *Heydorf v. Cooper,* 90 Kan. 511, 135 Pac. 578), determines the status of the child." (p. 275.)

It is inaccurate to state that an adopted child is no longer the child of its natural parents for any purposes. For one example, it may be observed that such a child possibly may inherit from its natural parents. (See 1 Am. Jur. 565.) We do not have such questions before us, however. For present purposes the language of our statute (G. S. 1935, 38-105) is controlling. It reads:

"Any parent may, with the approval of the probate judge . . . relinquish all right to his or her minor child or children to any other person or persons desirous of adopting the same, and shall not thereafter exercise any control whatever over such child or children so relinquished; and the person or persons so receiving into his, her or their charge such child or children shall exercise all the rights over the same that they would be entitled to were such child or children the legitimate offspring of said person or persons so receiving them."

The statute is unambiguous and as a result of its clear, conclusive language the adopting parents become the legal parents of the child or children by reason of valid adoption proceedings. Thus, it will be seen that in the present case the natural mother has the status of a third party who is interested in the welfare of children whose lawful parents she contends are neglecting and abusing them. Our statute (G. S. 1935, 60-2223) reads:

"Writs of habeas corpus shall be granted in favor of parents . . ."

Who are the parents of the children involved in the present case? Manifestly, since the adoption proceedings were valid, the adoptive parents have become the parents who may invoke the statutory aid. It should be noted that there is a difference in the status of children who have been placed in the custody of a third party or of an institution or for whom guardians have been appointed and the status of children who have been lawfully adopted. In the first given instances their parents have not been changed by the law. In the event of a valid adoption they have been changed. In some of our decisions pertaining to the right of courts to change the custody of children in habeas corpus proceedings some statements appear without qualification to the effect that courts having jurisdiction in habeas corpus cases may take a child from the custody of a parent and give it to a stranger. For an instance see the case of *Foundling Hospital v. Harrington,* 113 Kan. 521, 215 Pac. 303, in which the following appears:

"Where the best interests of a child will be promoted, its custody may be taken from a parent and given to a stranger. (*Chapsky v. Wood,* 26 Kan. 650; *In re Guber,* 105 Kan. 515, 184 Pac. 850.) The jurisdiction of the juvenile court is not exclusive. The supreme court may, on habeas corpus, take an infant away from one to whom the custody of the infant has been given by the juvenile court and give that custody to another." (p. 523.)

Examination of the cases cited in support of the statement reveals that the case of *Chapsky v. Wood,* 26 Kan. 650, was a habeas corpus action brought by a father against his sister-in-law with whom the child had been left for many years but the sister-in-law had never been declared the mother of the child by adoption proceedings. In the case of *In re Guber*, 105 Kan. 515, 184 Pac. 850, the habeas corpus action was brought by a father to obtain custody of his infant daughter from her maternal grandparents. The grandparents, however, had not legally adopted the child. In such case the court found that the father was not at the time of the trial a proper person to have care and custody of the child and placed the child in the custody of a third person so that the father might, nevertheless, have an unrestricted right of visitation. In neither of the cases was the writ sought by a stranger or against the natural or adoptive parents of a child.

3. It should be noted further that jurisdiction in habeas corpus cases may not necessarily depend upon the status of the party

seeking the writ for the custody of a child. It is possible to con-
jecture a case in which a third party or a stranger might bring an
action seeking a writ of habeas corpus, and the welfare of the child
involved therein, which is always the paramount consideration,
might require that the child be taken from the custody and control
of others or even its parents but in such a case the issue involved
would have to extend beyond a controversy concerning whether the
child was a "dependent child" or a "neglected child" as such terms
are now defined by our applicable statute. Our statutes pertaining
to juvenile courts (G. S. 1935, 38-401 *et seq.*) provide in section
38-402 that:

"For the purpose of this act, the words 'dependent child' and 'neglected
child' shall mean any child who . . . has not proper parental care or
guardianship, . . . who is found living . . . with any vicious or dis-
reputable persons; or whose home, by reason of neglect, cruelty, or depravity
on the part of its parents, . . . is an unfit place for such a child . . ."

The juvenile-court act clearly creates and establishes a court
"whose jurisdiction shall pertain to the care of dependent, neg-
lected and delinquent children." (G. S. 1935, 38-401.) Moreover,
we are admonished that the act shall be liberally construed by the
provisions of G. S. 1935, 38-415, which reads:

"This act shall be liberally construed, to the end that its purposes may be
carried out, to wit, that the care, custody, and discipline of a child shall
approximate, as nearly as may be, proper parental care . . ."

Thus, it will be seen that generally the question whether a child is
being afforded proper parental care is a question concerning which
the juvenile court has original jurisdiction. The question arises
whether such court has exclusive original jurisdiction. If so, the
remedy afforded by habeas corpus is not a substitute for appeal,
and a petitioner should first exhaust his ordinary remedies. Such
a rule is so well recognized that it does not require citation of au-
thorities, but see *In re Sills,* 84 Kan. 660, 114 Pac. 856; *Ables v.
Amrine,* 155 Kan. 481, 126 P. 2d 231; and *Kneisley v. Hudspeth,*
161 Kan. 772, 173 P. 2d 247, and citations therein on page 774.

In connection with criminal matters involving children under
sixteen years of age, this court frequently has held that the juvenile
court has exclusive original jurisdiction. (See *Swehla v. Malone,*
114 Kan. 712, 220 Pac. 299; *State v. Dubray,* 121 Kan. 886, 250
Pac. 316; and *State v. O'Keith,* 136 Kan. 283, 15 P. 2d 443.) It
cannot be correctly asserted that the juvenile court's jurisdiction

is limited to criminal matters because G. S. 1935, 38-415, hereinbefore quoted, specifically provides that one of the purposes of the act is to provide "proper parental care." A determination of whether a child was being afforded such care would not necessarily involve any question of criminal conduct' on the part of the child. G. S. 1935, 38-404, which is a part of the juvenile court act, provides:

"Any reputable person, being a resident of the county, having knowledge of a child in his county who appears to be either dependent, neglected or delinquent, within the meaning of this act, may file with the court having jurisdiction in the matter a petition in writing setting forth the facts, verified by affidavit."

Therefore, it appears to follow that when any third person or stranger, as distinguished from a parent, desires to have determined the question whether a child is being given proper parental care, the juvenile court has exclusive original jurisdiction. As we have set forth in this opinion, the petitioner in this case only has the legal status of a third person or stranger. The conclusion reached at this point in the consideration of the case finds support in 2 Bartlett's Kansas Probate Law and Practice, page 552, section 1366, from which the following is quoted:

"In a proceeding in habeas corpus, any court having jurisdiction may adjudicate the rights of those contending for the custody of a dependent, neglected, or delinquent child, but jurisdiction then depends on the controversy over custody, and not on the fact that the child is dependent, neglected, or delinquent. While the jurisdiction of the juvenile courts is limited as to the custody of children, as above stated, such jurisdiction is exclusive in all cases of children under sixteen years of age where the charge comes within the definition of dependent, neglected, and delinquent children. Other courts have no original jurisdiction in the premises."

The question still remains: Does the petition in this case present any issue other than whether the children are being given proper parental care, or in other words, whether they are "dependent" and "neglected" children as defined by the statute hereinbefore quoted? The allegations of the petition have been summarized previously herein and the opinion should not be burdened by a repetition of them. When considered separately and collectively the allegations present only the question whether the children are being given proper parental care within the admonition of the legislature to the effect that the act must be liberally construed to the end that its purposes may be carried out. In so

holding, we do not overlook or depreciate the fact that in this proceeding the present and future welfare of the children is involved. Such elements are always involved when a case of dependent and neglected children is presented but when the question arises at the instigation of a third party who questions only the parental care being given by the natural or adoptive parents of a child under the age of sixteen, the jurisdiction of the juvenile court should be exhausted by original proceedings in that court followed by appeal to the district court before other proceedings are attempted.

The rulings of the district court are affirmed.