No. 47,328

Kevin D. Jones and Jean L. Jones, *Appellants*, v. John F. Jones and Virginia N. Jones, *Appellees*.

(523 P. 2d 743)

Opinion filed June 15, 1974.

*John E. Wilkinson,* of Topeka, argued the cause and was on the brief for the appellants.

*Ralph E. Skoog,* of Crow & Skoog, of Topeka, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is a collateral attack upon an adoption decree issued by the Probate Court of Shawnee County, Kansas, on October 24, 1968. The action was brought on June 21, 1972, in the District Court of Osage County, Kansas. The petition demands custody of the child and damages for fraud against the adoptive parents. The plaintiffs (appellants) are the natural birth parents of an illegitimte child who was adopted by the parents (defendants-appellees) of the male plaintiff. The trial court rendered summary judgment for the defendants and appeal has been duly perfected.

The underlying question on appeal is whether the action was filed within the time period of statutory limitations and in the proper court.

All of the information before the trial court was contained in the defendants' request for admissions, defendants' interrogatories, various affidavits and the pleadings. A recitation of the facts disclosed by the record on appeal follows:

During the summer of 1967 Kevin Jones (plaintiff-appellant), 22 years of age, was spending his summer vacation from the Uni-

versity of Maryland (located in Hyattsville, Maryland), where he was a student, in Glenview, Illinois, with his parents John and Virginia Jones. Jean L. Labbe (plaintiff-appellant) seventeen years of age, resided in Wilmette, Illinois, with her parents. She had recently graduated from high school.

That summer Jean became pregnant by Kevin. Apparently, they did not disclose this information to any of their parents that summer. When the fall semester at school began Kevin returned to Hyattsville and Jean followed and moved in with Kevin.

On or about Thanksgiving Day in 1967, Kevin telephoned his father, John Jones (defendant-appellee), and related to him Jean was pregnant; Kevin felt sorry for her and wanted to help her; Jean did not want her parents to know about her condition because they were very religious and straight laced and would disown her if they learned she was pregnant; Jean was going to live in Maryland with Kevin until the baby was born; when the baby was born Kevin and Jean would put it up for adoption. John encouraged Kevin to marry Jean and offered to support them until Kevin was out of school and employed, however, Kevin refused. John further requested that he (John) and Kevin's mother (defendant-appellee) be allowed to adopt the child in the event the young couple did place it for adoption, and Kevin rejected the idea, stating the defendants were too old.

The plaintiffs contacted an adoption agency in Washington, D. C. prior to the child's birth and arranged to have the baby put up for adoption shortly after its birth.

There were other conversations between Kevin and John, similar to the Thanksgiving Day discussion recited above. Kevin adamantly refused to either marry Jean or permit John and Virginia to adopt the anticipated child.

On April 7, 1968, the baby, Jennifer Lisa Jones, was born and on April 8 the adoption agency placed Jennifer in a foster home. During the week of May 5 the agency's pediatrician examined Jennifer, along with various medical transcripts, and concluded she was not a proper subject for placement for adoption due to medical reasons. Thereafter the agency informed the plaintiffs it would not accept Jennifer for placement due to medical reasons and directed the plaintiffs to retake custody of her on May 15 or 16, 1968.

Faced with the necessity of providing for Jennifer, and unwilling to keep her themselves, Kevin and Jean decided the only acceptable

alternative would be to seek assistance from the defendants. During the weekend of May 10-12, 1968, Kevin telephoned John, apprised him of the adoption agency's rejection of Jennifer, and stated the defendant (John) could pick up the baby if the defendants would promise not to take her to Illinois where Jean's parents might learn of the birth. The defendant (John) replied he would pick up Jennifer on the following Friday, May 17; the defendants would not take Jennifer back to Glenview, Illinois, but would relocate to Topeka, Kansas. John telephoned Kevin later in the week, he related his plans to fly into Friendship Airport (located near Baltimore) at 5 p. m. on Friday, and suggested the plaintiffs meet him there with Jennifer so that he could catch a later flight to Kansas City. There was also some discussion that Kevin's brother and sister-in-law, Steven and Kay Jones, might be willing to adopt Jennifer.

The plaintiffs were unable to meet John at the airport on May 17 because of mechanical difficulties with their automobile. Consequently, John obtained a rental car and drove to the plaintiffs' apartment.

According to John, the plaintiffs had altered a "Consent for Temporary Care" form obtained from the adoption agency so that the defendants' names could be inserted, however, John would not take the child under such conditions. The plaintiffs stated in the request for admissions that they did not urge John to sign a form for temporary care of Jennifer.

After just a few minutes at the apartment, the plaintiffs, Jennifer, and John departed for the airport in the rented vehicle. Kevin drove since he was familiar with the road. As they rode, John handed Jean a document entitled "Consent" and requested them to execute and acknowledge it when they arrived at the airport, where John had arranged for a notary public to meet them. Jean read the "Consent" out loud. The document reads as follows:

"Come now Kevin D. Jones and Jean L. Labbe and state:

"They are the unmarried natural parents of a baby girl, born at Prince Georges General Hospital, Cheverly, Maryland, on April 8, 1968, and they voluntarily consent to the adoption of said baby by John Franklin Jones and Virginia Jones, husband and wife, and the said natural parents relinquished all their rights in and to said child, subject only to the final order of adoption of said child by a court of competent jurisdiction.

"Said natural parents further waive notice of the time and place of any and all proceedings for adoption, and consent that possession and custody of said child be given to the said John Franklin Jones and Virginia Jones pending hearing and final determination of said adoption proceedings."

John explained to the plaintiffs that Kevin's brother and sister-in-law were unable to adopt Jennifer at that time, but had recommended that the defendants adopt her and when defendants were no longer able to raise her they would take over the responsibility. John also observed that he and his wife were willing to accept Jennifer without any reservations, which was more than any other person or agency was willing to do.

Shortly before arriving at the airport the plaintiffs agreed to execute the "Consent".

Upon arriving at the airport, Kevin parked the car and the defendant ran into the terminal building to locate the notary public and they got into the car with the plaintiffs and Jennifer. According to the plaintiffs' admissions, they replied affirmatively to the notary's questions as to whether they were Kevin D. Jones and Jean L. Labbe; and whether they were executing the "Consent" as their free and voluntary acts without any reservations. The plaintiffs deny the notary discussed the contents of the "Consent" with the plaintiffs, asking them whether they understood the effect of the various provisions.

Immediately after the consent form was executed, John rushed to the terminal and departed for Kansas City with Jennifer.

Sometime in June or July of 1968 the plaintiffs spent a portion of a day at the defendants' house in Glenview, Illinois. The defendants were in the process of selling the residence and transporting the remainder of their household goods to their new residence in Topeka, Kansas. The plaintiffs saw Jennifer on this occasion but made no inquiries of the defendants as to why she was in the defendants' custody.

On August 30, 1968, the defendants filed a petition in Shawnee County Probate Court to adopt Jennifer. The petition contained the following paragraph:

"4. That said child was begotten and born out of lawful wedlock; that the natural parents of said child above named have by written instrument duly signed, executed, and acknowledged by them, freely and voluntarily consented to the adoption of the said child by these petitioners, and have waived notice of the time and place of any and all proceedings for adoption, which written consent so signed, executed and acknowledged, is filed herewith and made a part hereof."

The consent form executed by the plaintiffs on May 17, 1968, at Friendship Airport was filed simultaneously with the petition.

On October 4, 1968, after the Department of Social Welfare's

investigation and recommendation of the proposed adoption, and after the court was advised of the plaintiffs' consent to adoption and waiver of notice, the probate court granted the adoption. It is undisputed that the plaintiffs were not expressly apprised of this proceeding.

The next occasion either of the plaintiffs saw Jennifer was during the Christmas season of 1968, when Kevin spent part of his vacation at the defendants' residence in Topeka. Kevin made no inquiries of the defendants during this visit as to why Jennifer was in their custody or as to whether she had been adopted.

In November of 1969 Kevin and Jean were married. At this time they resided in New York, New York.

The following Christmas, the plaintiffs visited the defendants at their new residence in Lyndon, Kansas. The visit lasted a few days. Neither of the plaintiffs inquired of the defendants or any of their relatives, as to why Jennifer was in the custody of the defendants, or as to whether she had been adopted; nor did they assert that they had any right to the custody of Jennifer.

During the Christmas season of 1970 the plaintiffs again visited the defendants and Jennifer. On this visit, as in previous years, the plaintiffs did not inquire of the defendants, or anyone else, as to why Jennifer was in the defedants' custody, or as to whether she had been adopted; nor did they assert that they had a right to custody of Jennifer.

In late August of 1971 the plaintiffs moved to Topeka from New York so that Kevin could undertake studies at Washburn Law School.

On or about Thanksgiving Day 1971 the plaintiffs were informed by Stephen and Kay Jones that the defendants had adopted Jennifer. Shortly thereafter the plaintiffs confronted the defendants with the information and they admitted Jennifer had been adoped by them. On several occasions thereafter the plaintiffs demanded that the defendants return custody and control of Jennifer to the plaintiffs.

This action was commenced June 21, 1972, by the filing of the petition. The petition in part alleges:

"2. That on or about April 15, 1968, plaintiffs became the parents of a child, Jennifer; that on or about said date defendants did unlawfully, maliciously and with fraud entice the plaintiffs to part with the custody of their child; that as a result of said fraud practiced upon plaintiffs by defendants, defendants obtained custody of said child and thereafter, without notice to plaintiffs, did adopt said child."

The plaintiffs prayed for custody of Jennifer and $25,000 damages against the defendants.

Request for admissions and interrogatories were submitted by the defendants; both the admissions and the interrogatories were duly answered by the plaintiffs.

Subsequently, on July 24, the defendants filed their answer, which, among other things, denies they unlawfully, maliciously or with fraud enticed the plaintiffs to part with the custody of Jennifer; asserts the plaintiffs validly relinquished whatever parental rights they had with respect to Jennifer by executing the consent form; and admitted the defendants adopted Jennifer.

The defendants further answered by asserting as affirmative defenses the following allegations: The October 4, 1968, adoption decree was final and binding upon the plaintiffs (since the plaintiffs had consented to adoption and waived notice); Kevin, as an unwed father in Maryland, never had any parental rights with respect to Jennifer; Jean validly relinquished her parental rights by executing the consent form; the district court lacks jurisdiction to deprive the defendants of custody of Jennifer; the October 4, 1968, adoption is *res judicata* in this proceeding; any action the plaintiffs might assert for fraud is barred by K. S. A. 60-513 (3) because the plaintiffs had constructive notice of the adoption proceeding through public records; and the plaintiffs are guilty of laches in waiting three and one-half years to express a desire for visitation or custody of Jennifer and in failing to perform any act which purportedly constituted an exercise of plaintiffs' alleged parental rights. The defendants thereafter filed motions to dismiss and for summary judgment on grounds consistent with their affirmative defenses, and cross-petitioned for a temporary restraining order against the plaintiffs.

On July 26, 1972, the plaintiffs' attorney of record, Ernest J. Rice, filed a notice of withdrawal from the case. However, he was unable to serve notice upon the plaintiffs, who resided in New York at this time, until several months later.

On September 6, 1972, a hearing was held to consider the defendants' motion for summary judgment. The plaintiffs did not appear in person but the court found the plaintiffs had due and legal notice of the hearing by service upon their attorney of record, Mr. Rice. The court sustained the defendants' motion. It is unnecessary to recite the basis of the court's ruling because the plaintiffs filed a motion to vacate the judgment on the ground the plaintiffs' counsel

did not receive due and legal notice of the hearing. In January of 1973, at a hearing on the plaintiffs' motion to vacate, the court found that plaintiffs' counsel had not received notice of the September 6 hearing; consequently the summary judgment was vacated.

The defendants' motion for summary judgment was again set for hearing January 24, 1973. Written notice of the hearing was served by mail by the clerk of the court and the plaintiffs receipted for the letter. The plaintiffs had previously received notice of Mr. Rice's withdrawal.

On January 24, 1973, the defendants' motion for summary judgment was again before the court. The plaintiffs did not appear, though a member of the firm on behalf of Mr. Rice was in attendance. Once again summary judgment was rendered, however by agreement of the parties it was not entered. The agreement was to permit the plaintiffs' newly retained counsel, Mr. John E. Wilkinson, to represent their interests in a hearing.

Defendants' motion for summary judgment was reconsidered by the court at a February 22, 1973, hearing. On this occasion the plaintiffs appeared by their attorney.

The court heard arguments from the respective attorneys, examined the pleadings, answers to interrogatories, answers to requests for admissions and affidavits on file and verified pleadings, and found there was no genuine issue as to any material fact. For its findings the court relied upon the admissions of the plaintiffs. As to the questions of law, the court concluded that under Maryland law Jean, the mother of an illegitimate child, may validly relinquish her parental rights to such child, including her right to custody; on May 17, 1968, Jean validly relinquished in Maryland her rights to Jennifer, including the right to custody; on May 17, 1968, Jean had attained the age of eighteen years and under Maryland law was competent to consent to the adoption of Jennifer and to waive notice of any adoption proceeding; the document, entitled Consent, executed and acknowledged before a Maryland official authorized to take acknowledgments, delivered to the appellees in Maryland complied fully with the statutes and laws of the state of Kansas, and was and is a valid consent to adoption and a valid waiver of notice. Kevin, as the father of an illegitimate child, did not have any parental rights or the right to custody of the child, so was not legally entitled to notice and any rights he had were relinquished by his execution of the consent form; plaintiffs' action is a collateral

attack upon the adoption proceedings; plaintiffs are estopped from asserting that the defendants adopted Jennifer without notice to plaintiffs; plaintiffs are not the real parties in interest and lack capacity to sue for custody; adoptive parents have the right to custody of a child as opposed to the natural parents; the October 4, 1968, adoption proceeding is valid, binding and final; the plaintiffs had constructive notice of the adoption by the record of the adoption decree, and any alleged cause of action for fraud is barred by K. S. A. 60-513 (3) (two years after the adoption decree); Jean's alleged cause of action for fraud was barred by K. S. A. 60-515 on November 29, 1971, her 22nd birthday; defendants did not defraud the plaintiffs in connection with the adoption; and the record does not disclose any fiduciary relationship between the parties. The court thereupon rendered summary judgment on behalf of the defendants.

The decree of adoption entered by the Probate Court of Shawnee County, Kansas, on the 4th day of October, 1968, after reciting the appearance of the petitioners in person and by their attorneys reads as follows:

"The Court being duly and fully advised in the premises finds that the natural parents of said child have by written instrument duly signed, executed, and acknowledged by them, freely and voluntarily consented to the adoption of said child by the petitioners and have waived notice of the time and place of any and all proceedings for adoption, which written consent and waiver so signed, executed, and acknowledged, has been duly filed herein.

"The Court further finds that the Department of Social Welfare has been duly notified of the said petition and the proceedings herein and has made an investigation of the advisability of the proposed adoption, has reported its findings and recommendations to the Court and filed the same herein as provided by law and that the said Department of Social Welfare recommends the said adoption.

"The Court further finds that the petitioners are persons of good moral character and reputable standing in the community and are possessed of sufficient means and ability to maintain and educate the said child properly; that the best interests of said child will be promoted by said adoption and that said child is suitable for adoption and that all of the provisions of law relative to adoption have been complied with to the extent that an order and decree ought to be entered.

"IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that the adoption of Jennifer Jones, a minor, who was born at Cheverly, Maryland, on the 8th day of April, 1968, by John Franklin Jones and Virginia Jones, husband and wife, be and the same is hereby granted and the said child is hereby adopted as the child of the said petitioners and its name shall be and remain Jennifer Jones."

From the points asserted by the appellants it appears that the

thrust of their argument is that they were denied a "trial-type" hearing, and that their sworn answers to interrogatories and requests for admissions cannot be the basis of "findings of fact" upon which the trial court had the right to base conclusions of law. The appellants further claim that under the law and their pleadings, they had a right to a trial on the allegation of fraud in their pleadings.

The questioning of the validity of a decree of adoption in any proceeding other than a direct appeal or a petition to set aside the adoption is a collateral attack. (*Chamberlin v. Thorne*, 145 Kan. 663, 66 P. 2d 571.)

Where an adoption decree is given a standing of the judgment of a court of general jurisdiction, the lack of jurisdiction must appear from the record before it is subject to collateral attack. (*Denton v. Miller*, 110 Kan. 292, 203 Pac. 693.)

In this state a probate court is a court of general jurisdiction relative to an order of adoption; and it has been said that the failure of the record to show affirmatively the existence of facts essential to jurisdiction is not sufficient to defeat the judgment upon a collateral attack. Where the record is merely silent the presumption is that the necessary jurisdictional facts existed. (*Chamberlin v. Thorne*, supra; and *Denton v. Miller*, supra.)

Our decisions hold that valid adoption proceedings are not subject to collateral attack (*Walker v. McNutt*, 165 Kan. 533, 196 P. 2d 163; and *LeShure v. Zumalt*, 151 Kan. 737, 100 P. 2d 643).

The judgment or decree of adoption necessarily implies a finding of all material facts not inconsistent with the record, and though a petition for adoption omits allegations of consent of the parents, or of facts excusing such consent, the entry of the decree implies that the court found the necessary facts, and the decree is therefore not impeachable collaterally. (*Chamberlin v. Thorne*, supra).

Collateral attacks upon judicial proceedings are never favored, and where such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void but will be held to be valid. (*Woodring v. Hall*, 200 Kan. 597, 438 P. 2d 135; and *Kline v. Orebaugh*, 214 Kan. 207, 215, 519 P. 2d 691.)

Here the record of the adoption proceeding does not affirmatively show on its face any lack of jurisdiction. The consent which was filed in the adoption proceeding as set forth in the record is

clear and unambiguous, and according to the appellants, in their sworn answers to interrogatories and requests for admission, it was signed by them on May 17, 1968, at the airport in the State of Maryland. The appellant, Kevin, was then 22 years of age, a fifth year college student, and the appellant, Jean, was an eighteen year old, high school graduate. They, by their statement, had read the consent and told the notary public that they were signing the same voluntarily and without reservation. The trial court made findings in accordance with the foregoing facts and the adoption decree made specific findings regarding the consent for adoption and waiver of notice. Nothing in the record here presented would permit those admitted material facts to be impeached.

If the petition of the appellant makes claim merely to the "custody" of Jennifer (it does not pray to set aside the adoption or vacate the judgment of the court), the adoptive parents have the right to custody. (*Whittaker v. Coffman,* 112 Kan. 594, 211 P. 2d 1116.)

Where the adoption of a child is regularly obtained the status of the child is changed and it no longer remains the child of its natural parents, but becomes the child of another, and its relation to its natural parents ceases. (*Wilcox v. Fisher,* 163 Kan. 74, 180 P. 2d 283.)

K. S. A. 1973 Supp. 59-2103 (effective July 1, 1967) specifies the effect that adoption has upon the rights of the natural parents and upon the rights of the adoptive parents. It provides:

"Any child adopted as herein provided shall assume the surname of the person by whom the child is adopted, and, when requested by the person or persons petitioning to adopt said child, the court, in its discretion may change the given name or names of said child. When adopted said child shall be entitled to the same rights of persons and property as a natural child of the person thus adopting the child. The person so adopting such child shall be entitled to exercise all the rights of a natural parent and be subject to all the liabilities of that relation. Upon such adoption all the rights of natural parents to the adopted child, including their right to inherit from such child, shall cease, except the rights of a natural parent who is the spouse of the adopting parent."

The legal situation is, therefore, that the appellants, the birth parents, are strangers or third parties to the child, Jennifer, while the appellees are her parents, and as such, it is they who possess all the parental rights with respect to the child, including the right to custody.

This court has consistently held against collateral attacks upon

judgments of the courts of this state which have general jurisdiction of an issue. Where a court has jurisdiction of the parties to an action and of the subject matter, and renders a judgment within its competency, even if erroneous, the judgment is final and conclusive unless corrected or modified on appeal *or by such other method as may be prescribed by statute,* and it may not be attacked collaterally otherwise. (*State v. Shepard,* 213 Kan. 498, 516 P. 2d 945, Syl. ¶ 3.)

Consistent with the case law heretofore discussed, the legislature has recognized the wisdom of giving stability to adoption decrees by legislative enactments.

Provision is made for the adoption of children under the Probate Code (K. S. A. 59-2277 and 59-2278). The petition must be filed in the probate court and the proceedings conducted in the probate court. Provision for the written consent to adoption and the irrevocability of such consent is contained in K. S. A. 1973 Supp. 59-2102, which provides in part:

"Before any minor child is adopted, consent must be given to such adoption.

\* \* \* \* \*

"(2) by the mother of an illegitimate child. . . .

\* \* \* \* \*

"In all cases where the child sought to be adopted is over fourteen (14) years of age and of sound intellect, the consent of such child must be given. Consent in all cases shall be in writing. Whenever consent of a parent or parents is necessary it shall be acknowledged and may be acknowledged before the judge of a court of record, and when such consent is acknowledged before such a judge it shall be final and may not thereafter be revoked by the person or persons giving the same. In all other cases the written consent shall be acknowledged before an officer authorized by law to take acknowledgments, *and when such consent has been given in writing and has been filed of record in the probate court, the same shall be irrevocable, unless the consenting party or parties, prior to final decree of adoption, allege and prove that such consent was not freely and voluntarily given.* The burden of proof shall rest with the consenting party or parties. *Minority of a parent shall not invalidate his consent."* (Emphasis added.)

The foregoing statute was effective July 1, 1968, prior to the filing of the petition for adoption herein in August of 1968. It therefore has direct application to the facts in this case.

The Probate Code also makes provision for the vacation or modification of judgments in the probate court. K. S. A. 1973 Supp. 59-2213 provides:

"No judgment or decree shall be rendered in a probate proceeding without proof. The court shall have control of its orders, judgments, and decrees for

thirty days after the date of the rendition thereof. Thereafter such orders, judgments, and decrees may be vacated or modified as provided by K. S. A. 60-260 (*b*) of the code of civil procedure."

This statute became effective June 30, 1965, and is applicable to the facts in this case.

K. S. A. 60-260 (*b*), to which reference is made in 59-2213, *supra,* became effective January 1, 1964, and provides in part:

"Relief from judgment or order.

\* \* \* \* \*

"(*b*) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (*whether heretofore denominated intrinsic or extrinsic*), misrepresentation, or other misconduct of an adverse party; . . . The motion shall be made within a reasonable time, *and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken.* A motion under this subsection (*b*) does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in section 60-309 or to set aside a judgment for fraud upon the court. . . ." (Emphasis added.)

The provision in the above statute authorizing an independent action to relieve a party from a judgment where the party was "not actually personally notified" as provided in section 60-309 or to set aside a judgment for fraud upon the court, is not applicable to the facts in this case. Section 60-309 pertains to service by publication which has no application here, and the fraud alleged in this case, if any, was not upon the court.

The substance of the foregoing statutes is that the written consent for adoption given by the mother of Jennifer Jones, an illegitimate child, is irrevocable, unless prior to the final decree of adoption the natural mother alleges and proves in the probate court that such consent was not freely and voluntarily given. Having failed to appear in the probate court in accordance with these provisions to set aside the consent for adoption, the mother, Jean Jones, had one year to make an appearance by motion in the probate court to seek relief from the adoption decree on the ground of fraud under 60-260 (*b*) (3), *supra.*

The appellants, having failed to appear in the probate court by motion to attack the consent given for the adoption in this case within one year after entry of the adoption decree, are precluded

from proceeding in the probate court to attack the adoption decree thereafter.

The instant action was not filed in the probate court but in the district court making, in substance, a collateral attack upon the adoption decree, under circumstances which disclose that the probate court on the face of the record had jurisdiction of the parties and of the subject matter. The adoption decree is therefore not subject to collateral attack.

A collateral attack was attempted upon an adoption decree in *Meek v. Ames*, 177 Kan. 565, 280 P. 2d 957, under the old code of civil procedure. The rule there stated is in accordance with the law expressed herein. In the opinion the court said:

"The legislature in enacting our code of civil procedure, now appearing as G. S. 1949, Ch. 60, recognized that there must be a time fixed in which various types of action for the settlement of rights may be commenced and it did so under article 3 of the above chapter. We are not presently concerned with those provisions. However, it also recognized that after an action had been commenced and prosecuted to judgment, there should be some provision to avoid its finality if it had been irregularly obtained and some provision fixing the conditions under which that judgment might be vacated or modified and it did so under article 30 of the above chapter, and so far as applicable here those conditions have been noted above. Examination of the record now before us discloses that the probate court had jurisdiction to render a judgment in the adoption proceeding; that its jurisdiction was properly invoked under the statutes then in force; that the necessary parties were in court; that the necessary facts were shown and that a proper judgment within the competence of the court was rendered and that no effort was ever made to have it vacated. It may not be said the judgment was void. The contention made is that the judgment is to be held for naught and vacated for alleged fraud of the successful party in obtaining it, but the record discloses that the conditions precedent to its vacation for that reason have not been met. The result is that the judgment, even if voidable for any reason, had become a finality and beyond attack before the instant action was commenced." (pp. 572, 573.)

The appellants in their petition alleged that the adoption was had without notice to them. The consent which the appellants have, by sworn answers, admitted that they executed and acknowledged with the statement to the disinterested notary public that they were doing so voluntarily, and without reservation, provides:

"Said natural parents further waive notice of the time and place of any and all proceedings for adoption, and consent that possession and custody of said child be given to the said John Franklin Jones and Virginia Jones pending hearing and final determination of said adoption proceedings."

The procedure to be followed by the probate court in adoption

proceedings is specified in K. S. A. 59-2278. K. S. A. 59-2208 provides for notice, and further specifically provides:

". . . Any required notice may be waived in writing by any competent person or by any fiduciary."

Thus, it is clear the waiver of notice by the appellants in the instant case cured any defect regarding notice, if the appellants were competent. No contention is made that the appellants were not competent, and there is nothing in the record of the adoption proceedings indicating that either of the appellants were incompetent. In this collateral attack, the court was required to presume that there was sufficient evidence before the probate court to sustain its finding that the appellants were competent to waive notice and that the waiver of notice was fully operative. (*Chamberlin v. Thorne*, supra.)

It has been held that a party cannot be heard to say a notice he expressly waived was not given (*Smyser v. Fair*, 73 Kan. 773, 85 Pac. 408.)

Waiver is ordinarily the intentional relinquishment of a known right and is a voluntary act. It is the expression of the intention not to insist upon what the law affords. (*Flott v. Wenger Mixer Manufacturing Co.*, 189 Kan. 80, 367 P. 2d 44.) It has been held that a waiver of notice in the probate court is valid (*In re Estate of Reed*, 157 Kan. 602, 142 P. 2d 824).

The appellants' argument seems to be that the consent on file in the adoption proceeding is not a consent, and that the waiver of notice in the consent is not a waiver of notice. The probate court in the adoption matter found to the contrary.

The Maryland law regarding consent to the adoption of a child is similar to the Kansas law. Ann. Code of Md. Art. 16, § 74 provides in pertinent part:

"Consent to any proposed adoption shall be obtained from:

❋ ❋ ❋ ❋ ❋

"(d) The mother of a child born out of wedlock, if she is alive and has not lost her parental rights through court action or voluntary relinquishment or abandonment, except that if the child has been legitimated according to the laws of any jurisdiction, the consent of the father shall then also be required, if he is alive and has not subsequently lost his parental rights through court action or voluntary relinquishment or abandonment; . . .

❋ ❋ ❋ ❋ ❋

"Minority of a natural parent shall not place such parent under a disability in adoption or guardianship with the right to consent to adoption proceedings and such parent, if he has attained the age of eighteen (18) years, may give

a valid consent to adoption or guardianship with the right to consent to adoption and/or join as a party in such proceedings and shall be considered sui juris and no adoption or guardianship with right to consent to adoption shall be invalidated because of the minority of a natural parent. (An. Code, 1951, § 82; 1947, ch. 599, § 85G; 1953, ch. 5; 1955, ch. 622; 1963, ch. 173; ch. 558 § 2.)"

The appellants admitted by their own statements that the consent in the instant case was executed, acknowledged and delivered in Maryland, and that custody of Jennifer Jones was obtained in Maryland, all on May 17, 1968. The admitted facts also show that Jean L. Jones became eighteen years of age on November 29, 1967. Therefore, she had attained the age of eighteen years prior to May 17, 1968.

In addition, the Maryland statute provides that Jean L. Jones was under no legal disability with respect to placing the child for adoption. It expressly provides that she "shall be considered sui juris."

If such statutory presumption exists regarding the probate court, it follows that the appellants are estopped by the statute from asserting in the district court that their consent and waiver of notice were not freely and voluntarily given. In other words, if they cannot make such an assertion in the court which decreed the adoption, they cannot do in a collateral attack what they are prohibited from doing in a direct attack.

The trial court in conclusions of law specifically found that on May 17, 1968, the plaintiff, Jean L. Jones, had attained the age of eighteen years and under Maryland law was competent to consent to the adoption of Jennifer by the appellants, was competent to waive notice of any adoption proceeding had with respect to Jennifer, and was expressly made *sui juris* by the statutes of Maryland. It also found that by waiver of notice, the appellants were estopped from asserting that the appellees adopted Jennifer without notice to the appellants.

For the reasons stated the trial court did not err in sustaining the appellees' motion for summary judgment.

The judgment of the lower court is affirmed.