BRADLEY, Judge.
This is a child custody case.
Jeffery Alan Douglas was born September 1, 1978. The mother, Sandra Elaine Douglas, and the father were not married. On September 5, 1979 the child was adopted by his maternal grandparents, John Henry and Edith Douglas, under a final order of adoption rendered by the Probate Court of Covington County, Alabama.
In August 1981 Sandra Douglas married Randy Harrelson, the child’s father, and on November 9, 1982 the couple filed a petition for custody of their son, Jeffery.
After an ore tenus hearing on May 5, 1983, the trial court entered an order granting custody of Jeffery to his natural parents with reasonable rights of visitation to the adoptive parents.
On June 8, 1983 the Douglases filed a motion to vacate the judgment and enter a new judgment or, in the alternative, a new trial. The court denied the motion and they appeal.
The dispositive issue here is whether the trial court erred to reversal by taking custody of Jeffery from the adoptive parents and placing his custody with the natural parents.
In Alabama adoption is a status created by the state acting as parens patriae, the sovereign parent. Ex parte Bronstein, 434 So.2d 780 (Ala.1983). The policy of the adoption statute is to treat adopted children in all respects as natural children. Ex parte Bronstein, supra. One of the rights vested in the adoptive parents is the right to custody. Jones v. Jones, 215 Kan. 102, 523 P.2d 743, cert. denied, 419 U.S. 1032, 95 S.Ct. 515, 42 L.Ed.2d 307 (1974).
The presumption is strong that a child’s best interests lie with its natural parents, and the authority of the parents will not be interfered with except for gross misconduct or where the parents lack the capacity or the means to properly care for the child. Ex parte Sullivan, 407 So.2d 559 (Ala.1981). Where the dispute over a child’s custody arises between the natural parents and a third person, the superior claim is with the parents, and that custody will not be disturbed unless it plainly appears that a custody change is required. 407 So.2d 563, supra.
Since adoptive parents stand in the shoes of natural parents so far as custody of a child is concerned, the above propositions apply as well to adoptive parents.
In the case at bar the trial court determined that the best interests of the child required that the adoptive parents be deprived of its custody. We disagree and reverse.
The evidence shows that the natural mother, Sandra Douglas, was thirteen when she became pregnant, and she was living at home and going to school. The natural father, Randy Harrelson, was eighteen. Upon learning of her daughter’s pregnancy, Mrs. Douglas took Sandy to the Department of Pensions and Security in Andalusia. Sandy was told her only choice was to go to Mobile and have the baby and the state would put it up for adoption. Neither Sandy nor Mrs. Douglas wanted to give the child to a stranger. Mrs. Douglas then called Randy’s parents, Ralph and Betty Harrelson, and told them their son had caused her daughter to become pregnant. The Harrelsons agreed with Sandy and her parents that Ralph Harrelson would pay the medical expenses for the birth of the child plus a sum for a baby bed and clothes in return for his son never being revealed as the father of the child and for Randy being released from any obligation of support.
The child was born on September 1,1978. After his birth Sandy and the baby lived with her parents, the Douglases. On September 22, 1978 Sandy signed a consent form for her parents to adopt the child. Sandy testified that she consented to the adoption only because her parents assured her that if she ever married Randy, the child’s father, the child would be returned to her.
*987 A year later, on September 5, 1979, Jeffery’s adoption was finalized. There was no objection by anyone to the adoption of the child by the Douglases, nor was any appeal taken from the judgment of adoption.
Randy Harrelson married Sandy Douglas, the child’s mother, on August 15, 1981. The father testified that he never knew anything about the agreement entered into between Sandy and the grandparents. He states the reason he waited until November 1982 to file for custody of his son was to establish that he and Sandy had a nice home, could provide for the child, and were secure in their marriage.
Randy is now twenty-three years old and Sandy is eighteen years old. They are expecting another child. Although the evidence shows that Randy changed jobs frequently in the past, since January 1983 he has been working in his father’s convenience store and also sells cars for his father. He makes about $250 a week at the store and a twenty percent commission on the cars he sells. The couple have bought the child clothes, birthday and Christmas gifts, and have offered to take him to the dentist. They have a two bedroom brick home with a large yard, and Jeffery would have his own room.
Jeffery refers to the Douglases as “Mama” and “Daddy” and to his natural parents as Sandy and Randy.
Prior to her marriage to Randy Harrel-son, Sandy lived at home with her parents, the Douglases, and helped care for Jeffery. During the time she was living with her parents, Sandy completed the eleventh grade and also worked at Jack’s restaurant. She used part of her earnings to buy things for Jeffery and she also gave her parents some of her earnings. Sandy also helped care for Jeffery and the Douglases’ other children when she was not in school or working.
After marrying Randy, Sandy completed high school and worked for a period of time for her father-in-law.
The evidence is without dispute that the Douglases are fit parents. They are both employed and have provided most of the support for Jeffery. The evidence is also without dispute that Sandy and Randy Har-relson would be fit parents for Jeffery.
In view of the evidence that the child has lived with the Douglases for most of its life, i.e. about four years; that the child refers to the Douglases as mama and daddy; that adoption proceedings for the child were commenced within three or four weeks after its birth; that the child is well cared for and generously loved by the Douglases; and that the Douglases have the capacity, desire, and means to provide for Jeffery as they do their natural children, we find that the parental presumption reposed in the Douglases that Jeffery's best interests lie with them has not been overcome by the Harrelsons.
The natural parents also contend that the judgment of the trial court can be upheld on the ground that the decree of adoption was obtained by fraud and, therefore, it could be set aside and custody restored to the natural parents.
There was evidence in the record that the adoptive mother had promised the natural mother that if the natural mother would consent to the adoption of Jeffery that the adoptive mother would give the child to the natural mother if the natural mother, at some later time, married the natural father.
Whether such evidence would be sufficient to support a collateral attack on the adoption decree is immaterial in the case at bar. The trial court, in its decree, made no mention of the adoption decree; it only changed custody of Jeffery from the adoptive parents to the natural parents and gave the adoptive parents visitation rights. So, the only issue decided by the trial court and properly presented to this court is whether the trial court erred in changing Jeffery’s custody from the adoptive parents to the natural parents. We find that the trial court did err by changing Jeffery’s custody. Accordingly, the judgment of the *988 trial court is reversed and the cause is remanded for entry of judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur.