(288 P.3d 864)

No. 107,456

# In the Matter of the Adoption of I. M.

—

Opinion filed November 9, 2012.

*Richard W. Benson*, of The Law Office of Richard W. Benson, of Topeka, for appellant.

No appearance by appellee.

Before BUSER, P.J., MALONE and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: J.M. wants to adopt his former stepdaughter, I.M. I.M. has always considered J.M. her father. I.M.'s mother agrees that the adoption would be in I.M.'s best interest, but does not want to give up her own parental rights to I.M. The sole issue in this case is whether Kansas law allows such an adoption. Because we find Kansas law does not allow adoptions by former stepparents without a relinquishment of parental rights by the natural parents, we affirm the district court's dismissal of J.M.'s action.

## FACTUAL AND PROCEDURAL HISTORY

Mother and E.B. are I.M.'s natural parents. They were never married. Mother has always had sole custody of I.M. When I.M. was a toddler, Mother and J.M. married. They had one biological child together. Three years later they divorced. I.M. participated in parenting time with J.M. just as J.M.'s own biological child participated, although custody and visitation of I.M. does not appear to have been part of the divorce decree. Mother has since remarried. I.M. considers J.M. to be her father and she calls him her father.

Three years after the divorce, J.M. filed a petition for the adoption of I.M. The petition indicated that J.M. was I.M.'s former stepparent. In addition, the petition stated that Mother consented to J.M.'s adoption of I.M., so long as Mother retained her parental rights to I.M. The petition also set forth that consent from E.B. was unnecessary because he was an unfit parent who made no effort to support or communicate with I.M. before or after her birth.

The district court dismissed the petition because of the lack of statutory authority to grant this particular type of adoption. In essence, the district court believed that because J.M. was a single person attempting to adopt I.M., the Kansas statutory scheme requires that Mother's parental rights must be terminated if the adoption were to be granted. Although E.B. appeared at the hearing, his position on the adoption does not appear in the record on appeal.

## ANALYSIS

J.M. contends that the district court's dismissal of his petition to adopt I.M. for failure to state a claim was erroneous. J.M. asserts that he has constitutionally protected parental rights regarding I.M. because he was acting as her father *in loco parentis*.

We begin by noting that adoption is not a right, it is a statutory privilege. See *Lofton v. Secretary of Dept. of Children & Family*, 358 F.3d 804, 809, 812 (11th Cir. 2004) (acknowledging that since "there is no fundamental right to adopt or to be adopted, it follows that there can be no fundamental right to apply for adoption"); *Mullins v. State of Or.*, 57 F.3d 789, 794 (9th Cir. 1995) ("whatever claim a prospective adoptive parent may have to a child, we are certain that it does not rise to the level of a fundamental liberty interest"); *Lindley for Lindley v. Sullivan*, 889 F.2d 124, 131 (7th Cir. 1989) ("Because the adoption process is entirely conditioned upon the combination of so many variables, we are constrained to conclude that there is no fundamental right to adopt.").

This court has likewise held that because adoption is not recognized under common law, it is wholly a creature of statute. *In re Application to Adopt H.B.S.C.*, 28 Kan. App. 2d 191, 196, 12

P.3d 916 (2000). Accordingly, we must determine if Kansas statutes, specifically the Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 *et seq.*, allow J.M. to adopt I.M., while still allowing Mother to retain her parental rights. Interpretation of a statute is a question of law over which our review is unlimited. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009).

So we begin by reviewing the statutes governing adoption as they apply in this case.

Any adult may adopt any minor or adult as his or her child in the manner provided in the Kansas Adoption and Relinquishment Act (the Act). K.S.A. 59-2113. There are four types of adoptions listed in the Act, adult adoption, agency adoption, stepparent adoption, and independent adoption. K.S.A. 59-2112(a)-(d). I.M. is a minor, her custody has not been relinquished to any agency that would be required to consent to her adoption, and J.M. is no longer I.M.'s stepparent, so we must treat this as an independent adoption under the statute. The Act goes on to provide that "[u]pon adoption, all the rights of birth parents to the adopted person, including their right to inherit from or through the person, shall cease, except the rights of a birth parent who is the spouse of the adopting parent." K.S.A. 59-2118(b). Accordingly, in Kansas, if an unmarried individual wishes to adopt a child, the birth parents of the child

are required to relinquish all parental rights to the child. There is no exception to this requirement contained within the Act. J.M. could certainly proceed with an application for the adoption of I.M., but if successful, Mother and E.B. will lose their parental rights to I.M.

J.M. suggests several paths this court should take to avoid this result.

First, he asserts that he has acquired parental rights over I.M. by acting *in loco parentis* and, accordingly, he can consent to her adoption. He relies heavily on *Anderson v. Anderson*, 191 Kan. 76, 379 P.2d 348 (1963), and its predecessor, *State v. Taylor*, 125 Kan. 594, 264 P. 1069 (1928), for this proposition, so we will review those cases.

In both *Anderson* and *Taylor*, the former stepmother was given custody of the children after divorcing the biological father. Both fathers were found to be unfit. In each case the father challenged the court's authority to award custody of his child to his former spouse when she was neither the biological mother nor the adoptive mother. Both fathers relied on the language of the statute, which provided that upon granting a divorce, the court was required to make provisions for the minor children *of the marriage*. The fathers contended that their sole biological children were not children of the marriage. In both cases the Kansas Supreme Court held that the children were included in the meaning of "minor children of the marriage" as contained in the statute. *Anderson*, 191 Kan. at 79; *Taylor*, 125 Kan. at 596. Moreover, the court relied on the fact that courts have broad jurisdiction to protect infants, with the overriding and controlling consideration regarding their custody being the best interest of the child. 125 Kan. at 596. Because the fathers were unfit, having abandoned their wives and children, and the stepmothers had been acting *in loco parentis* to the children; the court found that the best interest of the children dictated they remain in the custody of their respective stepmothers.

But both *Taylor* and *Anderson* exclusively discuss custody determinations and make no mention of adoption. Custody and adoption are entirely different species, governed by different statutory provisions, and cannot be equated as J.M. desires this court to do.

See *Wilcox v. Fisher*, 163 Kan. 74, 79, 180 P.2d 283 (1947). Whether J.M. stands *in loco parentis* to I.M., based on his voluntary assumption of a parental role in her life, is irrelevant in the case of an independent adoption when both parents are alive and have not had their parental rights terminated. See K.S.A. 59-2129(a). Moreover, the Act specifically defines a person *in loco parentis* for purposes of adoption as an "individual or organization vested with the right to consent to the adoption of a child *pursuant to relinquishment or an order or judgment by a district court of competent jurisdiction.*" (Emphasis added.) K.S.A. 59-2112(g). No one has relinquished any rights to I.M., nor has there been any court order or judgment concerning her availability for adoption. J.M. does not qualify under the statute as a person *in loco parentis*. He has no statutory authority to consent to his own adoption of I.M.

Next, J.M. asserts that he is I.M.'s common-law guardian and as such he has a constitutionally protected liberty interest in her adoption. But under the common law, guardianship of a child was vested in the father and in the event of his death in the mother, and in the event of the death of both parents in the next of kin. *Paronto v. Armstrong*, 161 Kan. 720, 725, 171 P.2d 299 (1946). This was later codified at K.S.A. 59-3051(l), defining a "natural guardian" for a minor as the minor's biological parents, if the parental rights have not been terminated. See K.S.A. 59-3053. J.M. is not I.M.'s biological parent, and even if E.B.'s parental rights were terminated, Mother remains her sole natural guardian. So this argument also fails.

Finally, J.M. asserts that by expanding the common definitions of parent, spouse, and stepparent, we could interpret this action to be the equivalent of a stepparent adoption. But we must give common words their common meaning. The statute defines a stepparent adoption as "the adoption of a minor child *by the spouse of a parent* with the consent of that parent." (Emphasis added.) K.S.A. 59-2112(d). It is undisputed that I.M. has two parents, a mother and a father, Mother and E.B. A stepparent is the spouse of one's mother or father by a later marriage. Black's Law Dictionary 1223 (9th ed. 2009). Mother and J.M. are no longer married and have not been for several years. In fact, Mother is married to someone

else. Because J.M. is no longer Mother's spouse, he is no longer I.M.'s stepfather. We note that some states do specifically allow *former* stepparent adoptions under the same terms as current stepparent adoptions, but they do so by specific statutory language. *Cf.* Tex. Fam. Code Ann. § 162.001(b)(4) (Vernon 2008). We are not in a position to add words and meaning to a statute that is clear and unambiguous.

We are aware that several courts around the country have recognized what has been called a "second-parent" adoption. A second-parent adoption is when an unmarried partner is permitted to adopt the biological or legal child of the parent without requiring the parent to relinquish any parental rights, so long as the parent consents to the adoption. Cottor, *Current Trends in Second-Parent Adoptions*, 17 No. 9 Divorce Litig. 141 (September 2005). Generally, unlike here, these adoptions involve persons in a committed relationship at the time of the adoption. Courts that have recognized second-parent adoptions either do so by specific statutory authority or by broad judicial interpretation of existing statutes. *Cf.* Vt. Stat. Ann. tit. 15A, § 1-102(b) (2010); Cal. Fam. Code § 9000(b) (West 2004); Con. Gen. Stat. § 45a-724(a)(3) (2004); *In re M.M.D.*, 662 A.2d 837, 860 (D.C. 1995); *Adoption of Two Children by H.N.R.*, 285 N.J. Super. 1, 8-9, 666 A.2d 535 (1995).

Again, lacking any clear statutory authority in Kansas to allow J.M. to adopt I.M. while allowing Mother to retain her parental rights, we are not inclined to judicially create such authority. We agree with our sister states that have strictly interpreted similar statutory language to require the relinquishment of all parental rights of the biological parents, except in the case of a traditional stepparent adoption. *Cf. S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 828 (Ky. App. 2008); *In re Adoption of Luke*, 263 Neb. 365, 371, 640 N.W.2d 374 (2002); *Boseman v. Jarrell*, 364 N.C. 537, 545, 704 S.E.2d 494 (2010).

Accordingly, we find that Kansas adoption laws do not allow a former stepparent to adopt a former stepchild while also allowing the biological parents to retain parental rights over the child. If such an adoption is to be allowed in the future it will have to be by legislative enactment. Therefore, the district court did not err

when it dismissed J.M.'s petition to adopt I.M. for failure to state a claim.

Affirmed.