# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 62

APRIL TERM, A.D. 2021

May 5, 2021

IN THE MATTER OF THE ADOPTION OF:
ATWS, minor child,

KA,

Appellant
(Petitioner).

S-20-0184

*Appeal from the District Court of Natrona County*
*The Honorable Daniel L. Forgey, Judge*

*Representing Appellant:*
Stacy L. Rostad, Laramie, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, JJ., and FENN, DJ.*

*BOOMGAARDEN, J., delivers the opinion of the Court; FENN, DJ., files a dissenting opinion, in which KAUTZ, J., joins.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]    Presented a unique adoption scenario, the district court denied KA's unopposed Petition for Adoption of Minor Child pursuant to Wyo. Stat. Ann. §§ 1-22-101 et seq. (LexisNexis 2019).  Narrowly construing § 1-22-104(b), it concluded KA did not qualify to file an adoption petition because he is married and thus not a "single adult," he did not jointly file to adopt the Child with his current wife, and his current wife is not the Child's mother—his ex-wife is.  Construing § 1-22-104(b) in harmony with the purpose of the Wyoming adoption statutes and *in pari materia* with § 1-22-103, we reverse and remand.

### ISSUE

[¶2]    Do the adoption statutes prohibit KA from adopting the Child?

### FACTS

[¶3]    KA seeks to adopt his ex-wife's son (the Child).  When KA and the Child's mother, BLS, began dating in 2008, the Child was five months old; his natural father was absent.  KA immediately stepped in and developed a father/son relationship with the Child.  KA and BLS married, divorced, and remarried other people, but continue "coparenting" the Child.  KA refers to the Child as his son, the Child refers to KA as "Dad," and BLS refers to KA as her son's father.

[¶4]    The Child lives with BLS and her spouse in Casper, Wyoming.  KA, who lives in Douglas, Wyoming with his spouse, is very involved in the Child's life.  He attends school meetings and activities, takes the Child to medical appointments, and confers with BLS on matters affecting the Child's well-being.  The Child regularly spends time with KA, including on many weekends, on alternating holidays and school breaks, and for half of summer break.  The Child has a sibling relationship with KA's biological son and KA's extended family considers the Child part of their family.  Until recently, the Child believed KA was his biological father.  On learning otherwise, the Child requested KA adopt him.

[¶5]    In December 2019, KA filed an unopposed petition to adopt the Child in the District Court for the Seventh Judicial District.  The petition reiterated many of the facts recited above, but added some information pertinent to this appeal.  First, BLS consents to the adoption.  Second, the Child's biological father, who lives in North Dakota, signed a relinquishment and consent to adoption; a petition to terminate his parental rights was pending.  Third, KA is of good moral character and fit and proper to adopt.  He could continue to provide proper care, nurturing, and parenting to the Child.  KA attached his affidavit pursuant to Wyo. Stat. Ann. § 1-22-104, along with BLS's consent to adoption, to the petition.

1

[¶6]    In March 2020, the same court entered an order terminating the natural father's parental rights. The father failed to answer, plead, or defend the matter, and consented to the termination. The court found by clear and convincing evidence that the Child had been left in another person's care without provision for his support and without communication from the absent parent for at least one year. The natural father had not seen or interacted with the Child since the Child was a baby, and it was in the Child's best interests to terminate his parental rights.

[¶7]    The court denied KA's adoption petition that July. Though it empathized with the reasons for the requested adoption, the court felt constrained—absent clarification from the legislature or this Court—to strictly construe the adoption statutes and concluded that KA failed to establish that he qualified to adopt the Child under the plain language of § 1-22-104(b). The court also doubted whether BLS could retain her parental rights if KA adopted the Child. It identified *In re Adoption of I.M.*, 48 Kan.App.2d 343, 288 P.3d 864 (2012) as "an example of a Kansas court that applied Kansas statutes to similar circumstances and reached a similar conclusion." KA timely appealed.

## *STANDARD OF REVIEW*

[¶8]    Statutory interpretation and construction are questions of law we review de novo. *Matter of Adoption of MAJB*, 2020 WY 157, ¶¶ 9, 13, 478 P.3d 196, 200–01 (Wyo. 2020) (citations omitted); *see also In re Estate of Kirkpatrick*, 2003 WY 125, ¶ 6, 77 P.3d 404, 406 (Wyo. 2003).

[¶9]    "When interpreting statutes, we first look to the statute's plain language to determine the legislature's intent and we examine the plain and ordinary meaning of the words to determine whether the statute is ambiguous." *Matter of Estate of Frank*, 2019 WY 4, ¶ 7, 432 P.3d 885, 887 (Wyo. 2019) (citing *In re Estate of Meyer*, 2016 WY 6, ¶ 17, 367 P.3d 629, 634 (Wyo. 2016)); *see also Interest of: AA*, 2021 WY 18, ¶ 17, 479 P.3d 1252, 1258 (Wyo. 2021) ("When interpreting . . . statute[s] and [their] application, we first look at the plain language used by the legislature." (citation omitted)). "We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia*." *Estate of Frank*, ¶ 7, 432 P.3d at 887 (quoting *In re Estate of Johnson*, 2010 WY 63, ¶ 8, 231 P.3d 873, 877 (Wyo. 2010)).

[¶10]   "A statute is clear and unambiguous if reasonable persons can agree on its meaning with consistency and predictability." *Id.* ¶ 8, 432 P.3d at 887 (citing *Estate of Meyer*, ¶ 17, 367 P.3d at 634). "Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations." *Id.* (quoting *Estate of Meyer*, ¶ 17, 367 P.3d at 634). "If we determine the language of a statute is ambiguous, we apply general principles of statutory construction 'to construe any ambiguous language to accurately reflect the intent of the legislature.'" *Id.* (quoting *Estate of Meyer*, ¶ 21, 367 P.3d at 636).

2

[¶11] "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute given its design and purpose.'" *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015) (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)). As we have said before, "it is one of the surest indexes of a mature and developed jurisprudence . . . to remember that the statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Id.* ¶ 13, 344 P.3d at 765 (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945), *judgment aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945)); 2A *Sutherland on Statutory Construction* § 45:9 (7th ed.) (database updated Nov. 2020).

## DISCUSSION

[¶12] After the district court denied KA's petition and while this appeal was pending, we issued a decision identifying some important principles and distinctions we must heed when construing Wyoming's adoption statutes.

> We have had many opportunities to construe Wyoming's adoption statutes in the context of fundamental rights or statutory procedure. "The right to associate with one's child is protected by both the Wyoming and United States constitutions, therefore **adoption statutes are 'strictly construed when the proceeding is against a nonconsenting parent**, and every reasonable [inference] is made in favor of that parent's claims.'" *Matter of Adoption of ZEM*, 2020 WY 17, ¶ 11, 458 P.3d 21, 24 (Wyo. 2020) (quoting *In re Adoption of AMP*, 2012 WY 132, ¶ 11, 286 P.3d 746, 749 (Wyo. 2012)); *see also Matter of Adoption of CJML*, 2020 WY 23, ¶ 7, 458 P.3d 53, 55 (Wyo. 2020) (same). "It is appropriate, therefore, to construe adoption statutes narrowly insofar as a case involves such fundamental constitutional rights as parenthood and the right to procreate." 2 C.J.S. *Adoption of Persons* § 7, Westlaw (database updated November 2020); *In re CW*, 2008 WY 50, ¶ 8, 182 P.3d 501, 503–04 (Wyo. 2008) ("[A]doption statutes are strictly construed when the proceeding is against a nonconsenting parent, and every reasonable intendment is made in favor of the parent's claims." (quoting *In re Adoption of JRH*, 2006 WY 89, ¶ 13, 138 P.3d 683, 686 (Wyo. 2006))). **However, "[A]doption statutes are not to be construed so narrowly or strictly as to defeat the legislative intent."** 2 C.J.S. *Adoption of Persons* § 7.

3

We have said that "[a] statute must be viewed in terms of its objective purpose." *Halliburton Co. v. McAdams, Roux & Assocs.*, 773 P.2d 153, 155 (Wyo. 1989). ***The purpose "of the adoption laws is to make provision for the welfare of children, [and] the better rule is to construe adoption statutes in a manner which will promote this purpose."*** *Matter of Adoption of BGD*, 719 P.2d 1373, 1382 (Wyo. 1986); *see also* 3A J.G. Sutherland, *Statutes and Statutory Construction* § 69:4, at 713 (8th ed. 2018) (Remedial statutes, such as adoption laws, are "enacted for the protection of life and property and to introduce regulations conducive to the public good."); *Wright v. Wysowatcky*, 147 Colo. 317, 363 P.2d 1046, 1048 (1961) ("While courts were formerly inclined to regard adoption statutes as in derogation of the common law and therefore to be strictly construed, the humanitarian purposes of such statutes came to be recognized, and courts generally have evinced a disposition to afford them a more liberal construction."); *Matter of Petition of Phillip A.C.*, 122 Nev. 1284, 149 P.3d 51, 58 (2006) ("Statutes with a protective purpose should be liberally construed in order to effectuate the intended benefits."); *Sharon S. v. Superior Court*, 31 Cal.4th 417, 2 Cal.Rptr.3d 699, 73 P.3d 554, 560 (2003) ("The rule is that the adoption statutes are to be liberally construed with a view to effect their objects and to promote justice. Such a construction should be given as will sustain, rather than defeat, the object they have in view." (citations omitted)).

*MAJB*, ¶¶ 21–22, 478 P.3d at 203–04 (emphasis added).

[¶13] This case, like *MAJB*, "does not involve the termination of parental rights, a nonconsenting parent, or the failure to comply with statutory procedures." *See id.* ¶ 23, 478 P.3d at 204. As explained above, the Child's natural father is not a party to this proceeding. The court terminated his parental rights after he relinquished them and consented to the adoption. The Child's natural mother has also consented to the adoption. It is in this context we must decide whether the legislature intended the provision pertaining to who may file an adoption petition, § 1-22-104(b),[1] to narrow the statutory description at § 1-22-103[2] of who may adopt, recalling that our "adoption statutes are not to be construed

---

[1] "A petition may be filed by ***any single adult*** or jointly by a husband and wife who maintain their home together, or by either the husband or wife if the other spouse is a parent of the child." Wyo. Stat. Ann. § 1-22-104(b) (LexisNexis 2019) (emphasis added).

[2] "***Any adult person*** who has resided in this state during the sixty (60) days immediately preceding the filing of the petition for adoption and who is determined by the court to be fit and competent to be a parent may adopt in accordance with this act." Wyo. Stat. Ann. § 1-22-103 (LexisNexis 2019) (emphasis added).

so narrowly or strictly as to defeat the legislative intent." *MAJB*, ¶ 21, 478 P.3d at 204 (citation omitted); *see also United States v. Brown*, 333 U.S. 18, 25, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948) ("The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose.").

[¶14]  We begin with the observation that there is nothing in the adoption statutes to expressly prohibit KA from adopting the Child.  *See* Wyo. Stat. Ann. §§ 1-22-101 to -117 (LexisNexis 2019).  As noted above, the description in § 1-22-103 of who may adopt is broad.  And in satisfaction of that provision KA is an "adult person" who resided in Wyoming during the 60 days immediately before he filed the petition.  The district court has yet to determine whether he is "fit and competent to be a parent," but he included information regarding his parental fitness and competence with his unopposed petition and he addressed those matters at the hearing.

[¶15]  In instructing an adopting party how to commence an adoption proceeding by filing a petition in district court, the statute explains "[a] petition may be filed by any single adult or jointly by a husband and wife who maintain their home together, or by either the husband or wife if the other spouse is a parent of the child."  Wyo. Stat. Ann. § 1-22-104(a)–(b). The district court determined that KA is not a "single adult" because he is married, and therefore he is not permitted to file a petition.  We agree that if the legislature intended "single adult" to mean "unmarried adult" then KA cannot petition to adopt the Child.  On the other hand, if "single adult" is subject to different reasonable interpretations, we must construe that phrase in harmony with -103, and in a manner reflecting the design and discernable purpose of the adoption statutes.

[¶16]  As shown below, the word "single" in the phrase "single adult" is susceptible to more than one meaning.  The phrase, therefore, is ambiguous.[3]  *See Life Techs. Corp. v. Promega Corp.*, --- U.S. ---, 137 S.Ct. 734, 739–40, 197 L.Ed.2d 33 (2017) (concluding the term "substantial" was ambiguous because it "may refer either to qualitative importance or to quantitatively large size"); *Bd. of Cty. Comm'rs of the Cty. of Laramie v. City of Cheyenne*, 2004 WY 16, ¶¶ 20–21, 85 P.3d 999, 1005–06 (Wyo. 2004) (determining that use of words without defining them rendered a statute ambiguous when dictionary definitions showed different reasonable interpretations); *Lance Oil & Gas Co. v. Wyo. Dep't Of Revenue*, 2004 WY 156, ¶ 20, 101 P.3d 899, 905 (Wyo. 2004) (holding a mineral tax statute ambiguous because the word "producer" was "susceptible to more than one interpretation").

---

[3] The word "adult" is not ambiguous.  It "means a person who is not a minor[.]"  *See* Wyo. Stat. Ann. § 8-1-102(a)(i) (LexisNexis 2019) ("[U]nless the legislature clearly specifies a different meaning or interpretation or the context clearly requires a different meaning: (i) 'Adult' means a person who is not a minor[.]").

[¶17]  The legislature defined several terms used in the adoption statutes, but it did not define the word "single."[4]  *See* Wyo. Stat. Ann. § 1-22-101(a) (defining "[a]gency," "[c]hild," "[p]arent," "[p]utative father," and "[t]his act").  "Single" is not a technical word.  We must therefore look to the word's ordinary meaning.  *See Black Diamond Energy of Del., Inc. v. Wyo. Oil & Gas Conservation Comm'n*, 2020 WY 45, ¶ 36, 460 P.3d 740, 750 (Wyo. 2020); Wyo. Stat. Ann. § 8-1-103(a)(i) (LexisNexis 2019) ("[U]nless that construction is plainly contrary to the intent of the legislature: (i) Words and phrases shall be taken in their ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import[.]").  In looking to its ordinary definition, we find that "single" has two meanings— "not married" or "unaccompanied by others."  *See* https://www.merriam-webster.com/dictionary/single (last visited March 1, 2021).  Black's Law Dictionary defines "single" as either "[u]nmarried <single tax status>" or "[c]onsisting of one alone; individual <single condition> <single beneficiary>."  *Single, Black's Law Dictionary* (11th ed. 2019).  Consequently, we must determine which meaning the legislature intended when it described an adult petitioner as "single."

[¶18]  When intending to specify "one" or "individual," the Wyoming legislature frequently uses the word "single."  *See, e.g.*, Wyo. Stat. Ann. §§ 9-3-415(d) ("single lump-sum amount"); 17-16-726(a) ("single voting group"); 17-16-1007(a) ("single document"); 23-3-201(b) ("single device"); 26-5-112(a)(v)(A) ("single assuming insurer"); 26-6-206(a)(i)(A) ("single premium immediate annuity contracts"); 26-14-103(a)(i) ("single insurer"); 26-23-307(a) ("single risk"); 26-27-105(b) ("single entity"); 26-42-102(a)(xiv)(A) ("single employer"); 31-5-209(a)(i) ("single lane"); 31-18-801(a)(xxv) ("single axle"); 31-18-802(a)(iv)(A) ("single vehicle"); 31-18-804(a) ("single trip permit"); 34-13-123 ("single custodianship"); 34.1-2-105(e) ("single article"); 34.1-4-210(b) ("single agreement"); 34.1-2-323(b)(i) ("single part"); 35-11-803(a) ("single permit"); 35-11-1429(d) ("single wall underground piping"); 37-7-102 ("single district"); 40-20-118(a) ("single line dealer" and "single line supplier"); 40-26-110(a) ("single family house").

[¶19]  When the legislature underscores marital status, we note the legislature frequently uses the term "unmarried."  *See* Wyo. Stat. Ann. §§ 2-4-204 ("an unmarried woman appointed administratrix"); 4-10-815(a)(ii)(A) ("unmarried competent owner"); 9-3-203(a)(iii) ("each unmarried child under" 26); 9-3-613 ("each unmarried child under" 18); 9-3-614(a), (b) ("each unmarried child under" 18); 14-2-1003(a) ("unmarried recipient of medical assistance"); 14-11-105(c) ("unmarried biological fathers"); 15-5-402(a)(vi) ("a person who is unmarried"); 20-1-202(a) ("as if he were unmarried"); 26-19-302(a)(ix) ("unmarried child under" 19 and "unmarried child who is a full-time student under" 23);

---

[4] The phrase "single adult" is not used elsewhere in the statutes; however, the legislature uses the phrase "qualified single person," as distinguished from "qualified married persons," as pertaining to tax refund applications under Wyo. Stat. Ann. § 39-11-109(c)(ii) (LexisNexis 2019).

27-14-102(a)(iii) ("unmarried minor"); 34-1-108 ("as she might, if she were an unmarried woman"); 34-1-109 ("in the same manner as though she were sole and unmarried"); 34-13-126(a) ("unmarried adult owners"); 42-2-103(e)(ii) ("unmarried parent under" 18); 42-2-106(b) ("unmarried minor parent applicants"). While not conclusive, these usage patterns indicate an intent to define "single adult" in -104(b) to mean one or "any adult," consistent with the legislature's identification of who may adopt in -103, and we should not ignore them.

[¶20]   Looking beyond these usage patterns, we focus on the central, discernible purpose of the adoption statutes—to provide for the welfare of children.  *See MAJB*, ¶ 22, 478 P.3d at 204.  If we interpret the word "single" in -104(b) to mean unmarried we unquestionably narrow the list of petitioners eligible to adopt a child, thus begging the question: to what legislatively intended end?  Perhaps the legislature wanted to ensure that someone who is married does not adopt a child without their spouse's consent.  *See, e.g.*, *Browder v. Harmeyer*, 453 N.E.2d 301, 307 (Ind. Ct. App. 1983) (recognizing that the public policy behind requiring a married person to jointly adopt with their spouse "is to guarantee harmony on the part of the adoptive parents upon the question of adoption, and to assure a welcome and affectionate reception of the child into its adoptive home" (quoting *In re Bresnehan's Will*, 221 Wis. 51, 64, 265 N.W. 93, 99 (1936))).  The legislature could have expressly provided such protection, but did not.

[¶21]   Section -104(b) is quite unlike provisions other states have adopted to expressly require a married person to obtain their spouse's consent to such an adoption, and such consent is not required under Wyo. Stat. Ann. § 1-22-109.  *See, e.g.*, Kan. Stat. Ann. § 59-2113 (specifying "one spouse cannot [adopt a child] without the consent of the other"); Nev. Rev. Stat. Ann. § 127.030(2) ("Except as otherwise provided in subsection 5, a married person not lawfully separated from his or her spouse may not adopt a child without the consent of his or her spouse, if such spouse is capable of giving such consent."); S.D. Codified Laws § 25-6-3 ("A married man not lawfully separated from his wife cannot adopt a child without the consent of his wife, nor can a married woman, not thus separated from her husband, without his consent, provided the husband or wife not consenting is capable of giving such consent."); Utah Code Ann. § 78B-6-114 ("(1) A married man who is not lawfully separated from his wife may not adopt a child without the consent of his wife, if his wife is capable of giving consent. (2) A married woman who is not lawfully separated from her husband may not adopt a child without his consent, if he is capable of giving his consent."); Vt. Stat. Ann. tit. 15A, § 3-301(b) ("The spouse of a petitioner shall consent to the petition unless judicially declared incompetent.").

[¶22]   Section -104(b) is also distinguishable from the clear, mandatory language used in other states to require a married person to file jointly with their spouse where that spouse is not the child's parent.  *See, e.g.*, Colo. Rev. Stat. Ann. § 19-5-202(3) ("A person having a living spouse from whom he is not legally separated **shall petition jointly** with such spouse[.]") (Emphasis added.); Ind. Code Ann. § 31-19-2-4(a) ("Except as provided in

subsection (b), a petition for adoption by a married person **may not be granted unless** the husband and wife join in the action.") (Emphasis added.); Md. Code Ann., Fam. Law § 5-3B-13(b)(2) ("If a petitioner is married, the petitioner's spouse **shall join** in the petition unless the spouse: (i) is separated from the petitioner under a circumstance that gives the petitioner a ground for annulment or divorce; (ii) is not competent to join in the petition[.]") (Emphasis added.); Tenn. Code Ann. § 36-1-115(c) ("If the petitioner has a spouse living, competent to join in the petition, such spouse **shall join** in the petition[.]") (Emphasis added.).

[¶23] The dissent deduces that legislative history evidences a legislative intent that -104(b) should be read so that "single" means unmarried, and therefore all married persons who maintain a home with their spouse must file joint petitions. But in 1977 the legislature removed the historical language that mandated "in the case of married persons maintaining a home together, the petition shall be the joint petition of husband and wife[.]" *See* 1973 Wyo. Sess. Laws ch. 91, § 1; 1977 Wyo. Sess. Laws ch. 187, § 1. As it reads today, -104(b) clearly permits rather than mandates different filing options: "[a] petition may be filed by any single adult or jointly by a husband and wife who maintain their home together, or by either the husband or wife if the other spouse is a parent of the child." Given this amendment, we cannot agree that the legislative history provides conclusive evidence the legislature intended to prohibit individual married adults from filing a petition.[5]

[¶24] What is clear and discernable, reading the adoption statutes as a whole, is that the child's best interest is at the forefront and district courts have the statutory responsibility, in any and all adoption circumstances, to determine whether the adoption is in the child's best interest. *See* Wyo. Stat. Ann. § 1-22-111(a) (requiring the district court to "act[] in the best interest and welfare of the child"). The legislature predictably placed this responsibility with the district court, as it would be impossible for the legislature to identify and address by statute every possible permutation of, or dynamic within, a blended family. Moreover, while we appreciate that best interests determinations are among the most difficult and demanding of tasks assigned to trial judges, *see Stonham v. Widiastuti*, 2003

---

[5] Some states that require joint petitions or spousal consent nevertheless carve out exceptions allowing the court to grant such adoptions when they are in the child's best interest. *See, e.g.*, Ky. Rev. Stat. Ann. § 199.470(2) ("If the petitioner is married, the husband or wife shall join in a petition for leave to adopt a child unless the petitioner is married to a biological parent of the child to be adopted, except that if the court finds the requirement of a joint petition would serve to deny the child a suitable home, the requirement may be waived."); Mich. Comp. Laws Ann. § 710.24(2)(b) (specifying that the court may allow "[a] married individual to adopt without his or her spouse joining in the petition if the failure of the other spouse to join in the petition or to consent to the adoption is excused by the court for good cause shown or in the best interest of the child"); N.M. Stat. Ann. § 32A-5-11(B)(2) (permitting adoption by "a married individual without the individual's spouse joining in the adoption if: . . . (c) the failure of the nonjoining spouse to join in the adoption is excused for reasonable circumstances as determined by the court."); N.C. Gen. Stat. Ann. § 48-2-301(b) ("Except as authorized by Articles 4 and 6 of this Chapter, the spouse of a petitioner must join in the petition, unless the spouse has been declared incompetent or unless this requirement is otherwise waived by the court for cause.").

8

WY 157, ¶ 13, 79 P.3d 1188, 1192 (Wyo. 2003), they are inherently fact-based and case-specific, *see ZEM*, ¶ 15, 458 P.3d at 25. And district courts alone are positioned to take and weigh testimony and evidence unique to the child welfare and parental rights concerns in each case. *See ZEM*, ¶ 15, 458 P.3d at 25; *In re Adoption of CF*, 2005 WY 118, ¶ 35, 120 P.3d 992, 1004 (Wyo. 2005); *Stonham*, ¶¶ 13–14, 79 P.3d at 1192–93.

[¶25]  In putting the child's best interest and welfare at the forefront, nowhere did the legislature prescribe what family structure is in a child's best interest. *See* Wyo. Stat. Ann. §§ 1-22-101 to -117. It left that fact-based, case-specific determination to the courts. Thus, we find no conclusive evidence the legislature intended -104(b) to narrow its broad but plain description in -103 of who "may adopt in accordance with this act." Sections -103 and -104(b) therefore are best read in harmony to recognize that "[a]ny adult person who has resided in this state during the sixty (60) days immediately preceding the filing of the petition for adoption and who is determined by the court to be fit and competent to be a parent may adopt in accordance with this act." Wyo. Stat. Ann. § 1-22-103. And, so long as those eligibility requirements are met, -104(b) permits a married petitioner to petition individually "or" jointly if he maintains a home together with his wife. Wyo. Stat. Ann. § 1-22-104(b).[6]

[¶26]  We therefore hold that KA may petition to adopt the Child. In acting on his petition, the district court must determine whether the adoption would be in the Child's best interest, Wyo. Stat. Ann. § 1-22-111(a), and in so doing address and develop a record on any relevant due process, parental responsibility, and child welfare concerns.

[¶27]  Finally, we note that the natural parents' rights, which are a countervailing consideration in adoption proceedings, are adequately protected in this case. *See CF*, ¶ 11, 120 P.3d at 999 ("The right to associate with one's children is a fundamental right protected

---

[6] Several practical considerations further demonstrate why -103 and -104(b) should be read in harmony to promote the purpose of the adoption statutes. First, in cases like this one, the adoption would formalize the only paternal relationship the Child has ever known. "[C]hildren have a right to stability and permanency in their family relationships." *MAJB*, ¶ 24, 478 P.3d at 204 (citation omitted). Also, where, as here, a natural parent and a prospective adoptive parent coparent a child as if they were his parents, the adoption would ensure that both remain equally committed to the child, and have ongoing responsibility for him. In the event that something were to happen to the natural parent, the child would be assured of legal access to, and support from, the adoptive parent. Like the natural parent, the adoptive parent would be able to obtain health insurance and other employment-related benefits for the child, and the adoptive parent would be allowed to act in the child's best interest without challenge to his parental authority by third parties such as school officials and medical providers.

The adoption would secure the child's rights to inheritance and eligibility for worker's compensation and Social Security benefits. Adoption also would protect the child in the event of the natural parent's death. If the prospective adoptive parent were not the child's legal parent and the natural parent died, the prospective parent would have to file an action for custody, guardianship, or adoption to preserve his relationship with the child. If contested, this process could be lengthy, costly, and result in denial, thus, in effect, causing the child to lose both parents.

9

by the Wyoming and United States Constitutions." (citation omitted)); *Matter of Voss' Adoption*, 550 P.2d 481, 485 (Wyo. 1976) ("[T]he earliest and most hallowed of the ties that bind humanity, in all countries considered sacred, is the relationship of parent and child. Therefore, parents have the first and natural right to their children."). The natural father's parental rights have already been terminated on grounds separate from this adoption. The natural mother consents to KA's adoption of the Child, conditioned on retention of her parental rights. By construing -104(b) in harmony with the purpose of Wyoming's adoption statutes and *in pari materia* with -103, we do not threaten BLS's parental rights.[7]

## *CONCLUSION*

[¶28]   The adoption statutes, whose purpose of providing for the welfare of children is the surest guide to their meaning, do not prohibit KA from adopting the Child, and the adoption, if finalized, would not impact BLS's parental rights. Because the district court denied the adoption petition on legal grounds, it did not make findings on whether the adoption would be in the Child's best interest and welfare. We therefore reverse and remand for further proceedings consistent with this decision.

---

[7] The Kansas case the district court relied on to suggest BLS could not retain her parental rights involved a statutory provision unlike any in the Wyoming adoption statutes. *Cf. Adoption of I.M.*, 48 Kan.App.2d at 345, 288 P.3d at 867–68 ("Upon adoption, all the rights of birth parents to the adopted person, including their right to inherit from or through the person, shall cease, except the rights of a birth parent who is the spouse of the adopting parent." (quoting K.S.A. § 59-2118(b))). In contrast, Wyo. Stat. Ann. § 1-22-114(a) provides that "Upon the entry of a final decree of adoption the former parent, guardian or putative father of the child shall have no right to the control or custody of the child. The adopting persons shall have all of the rights and obligations respecting the child as if they were natural parents." This plain language impacts the rights of a former parent, guardian, or putative father. Mother fits none of those categories.

**FENN, District Judge,** dissenting, in which **KAUTZ, Justice,** joins.

[¶29]   "At the common law adoption was unknown; therefore, the law governing the adoption of minor children and the rights and liabilities emanating therefrom are governed purely by statutory provisions." *In re Caldwell's Estate*, 186 P. 499, 500 (Wyo. 1920). Further, proceedings for adoption "must be conducted in substantial conformity with the provisions of the statute." *In re Adoption of Stausser*, 196 P.2d 862, 866 (Wyo. 1948). When interpreting adoption statutes, the same rules of statutory interpretation that apply to other statutes should be used.

[¶30]   The rules of statutory interpretation, applicable to unambiguous statutes, are well established:

> We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed **according to their arrangement and connection.** We construe the statute as a whole, **giving effect to every word, clause, and sentence**, and we construe all parts of the statute *in pari materia.* When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Wyoming Board of Outfitters and Professional Guides v. Clark*, 2001 WY 78, ¶ 12, 30 P.3d 36, ¶ 12 (Wyo. 2001); *Murphy v. State Canvassing Board*, 12 P.3d 677, 679 (Wyo. 2000). **Moreover, we must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.** *Billis v. State*, 800 P.2d 401, 413 (Wyo. 1990) (citing *McGuire v. McGuire*, 608 P.2d 1278, 1283 (Wyo. 1980)).

*State ex rel. Wyo. Dep't of Rev. v. Hanover Compression, LP*, 2008 WY 138, ¶ 8, 196 P.3d 781, 784 (Wyo. 2008) (emphasis added).  In addition, we "try to determine legislative intent by considering the type of statute being interpreted and what the legislature intended by the language used, viewed in light of the objects and purposes to be accomplished[.]" *Fraternal Order of Eagles Sheridan Aerie No. 186, Inc. v. State ex rel. Forwood*, 2006 WY 4, ¶ 16, 126 P.3d 847, 855 (Wyo. 2006).

[¶31]   The majority focuses on the word "single" in the statute.  The statutory provision at issue in this case reads: "(b) A petition may be filed by any single adult or jointly by husband and wife who maintain their home together, or by either the husband or wife if the other spouse is a parent of the child."  Wyo. Stat. Ann. § 1-22-104(b) (LexisNexis 2019). Although the word "single" may have more than one meaning in general, when due consideration is given to the arrangement and connection of "single" to the other words in the sentence, it is clear that "single" in this statute refers to one's marital status.  I would

find that the statute is not ambiguous, and there is no need to resort to the rules of statutory construction.

[¶32]  The majority asserts that the term "single" in Wyo. Stat. Ann. § 1-22-104(b) could mean an unmarried person or it could mean any individual, whether married or not. However, this interpretation ignores the requirement that we give every word and phrase meaning when we determine whether a statute is ambiguous.  *Jessen v. Burry*, 13 P.3d 1118, 1120 (Wyo. 2000).  If the term "single" means any individual, then the phrases "jointly by a husband and wife", "either the husband or wife if the other spouse is a parent of the child" and even "single" become meaningless.  To give meaning to every phrase in the statute, the only possible interpretation of the term "single" is an unmarried person.

[¶33]  Accordingly, I would affirm the district court's legal decision that the Petitioner was not a "single person" as required by the statute.  Ordinarily, my dissent would conclude here.  However, the majority opinion concluding the term "single" to be ambiguous appears to create a dual standard of statutory construction which requires further analysis and comment.

[¶34] Even if the statute could be considered ambiguous, the rules of statutory construction lead to the same result that "single" should be construed to refer to marital status.  We should begin with a review of the legislative history of the adoption statutes. An early version of the precursor to Wyo. Stat. Ann. §§ 1-22-103 and 104 read:

> Any person may appear before the district court or the judge thereof of the county where he or she resides and offer to adopt any minor child as his or her own; provided, such minor and his or her parents if living, or guardian, if any, or county commissioners, as hereinafter provided, shall appear and consent to such adoption.

Wyo. Comp. Stat. § 58-202 (Bobb-Merrill 1945).[8]  Under this version of the statute, the petitioner's marital status was irrelevant, and any person could adopt any child, provided the required consents were obtained.  However, this changed in 1955 when the legislature made sweeping changes to § 58-202, which then read, in relevant part:

> Proceedings for adoption of a minor child shall be by petition to the district court.  A petition to adopt a minor child may be filed by any natural person who is a resident of the State of Wyoming, and in the case of married persons maintaining a

---

[8] This version of the statute is similar to the statute originally enacted in 1887 with some supplemental provisions.  *See In re Adoption of Strauser*, 196 P.2d 862, 866 (Wyo. 1948) (citing §§ 2274–2286 R.S. (1887)).

12

home together, the petition shall be the joint petition of husband and wife.

1955 Wyo. Sess. Laws, ch. 184, § 1. For the first time, this amendment restricted adoption based on the petitioner's marital status, and it required a husband and wife who maintained their home together to file a joint petition.

[¶35] According to the 1963 Session Laws, the amendments that year were made "to provide limitations on who may be adopted [and] to establish what persons are qualified to adopt[.]" 1963 Wyo. Sess. Laws, ch. 59.[9] The amendments provided in relevant part:

> Section 3. The following persons, if residents of Wyoming, are eligible to adopt a child:
>
> (a) A husband and wife jointly, or either the husband or the wife if the other spouse is a parent of the child.
>
> (b) Any other person who is at least 21 years old.
>
> Section 4.
>
> A.   Proceeding for the adoption of a minor child shall be by petition to the district court. A petition to adopt a minor child may be filed by any natural person of 21 years of age who is a resident of the State of Wyoming, and in the case of married persons maintaining a home together, the petition shall be the joint petition of husband and wife, except that if one of the spouses be the natural parent of the child to be adopted, such natural parent shall not be required to join in the petition. . . .

1963 Wyo. Sess. Laws, ch. 59, §§ 3–4. Under this version of the statute, married persons were required to file joint petitions, while "other" persons who were at least twenty-one could file individual petitions.

---

[9] Later amendments imposed further restrictions on who is eligible to adopt a child. For example, the 1977 amendment created § 1-726.6, which imposed a requirement that the petition be filed "upon the entry of the child in the adoptive home or as soon thereafter as reasonably convenient." 1977 Wyo. Sess. Laws, ch. 187, § 1. The 1999 amendment created § 1-22-104(c)(iv), which required the petitioner to file an affidavit disclosing any felony or misdemeanor convictions, any previous or current diagnosed psychiatric disorders, and his or her current probation status. 1999 Wyo. Sess. Laws, ch. 111, § 1.

[¶36]   The statute was amended slightly in 1965 to read:

> Proceedings for the adoption of a minor child shall be by petition to the district court.  A petition to adopt a minor child may be filed by either (a) a husband and wife jointly, or either the husband or wife if the other spouse is a parent of the child, or (b) by any other person who is at least twenty-one (21) years old, who is a resident of the State of Wyoming, and in the case of married persons maintaining a home together, the petition shall be the joint petition of husband and wife, except that if one of the spouses be the natural parent of the child to be adopted, such natural parent shall not be required to join in the petition.

1965 Wyo. Sess. Laws, ch. 39, § 1.  Then in 1973, it was again amended to reflect a change in the age of majority:

> (a) Proceeding for the adoption of a minor shall be by petition to any district court in the state.  A petition to adopt a minor may be filed by either:
>
> > (i) A husband and wife jointly, or either the husband or wife if the other spouse is a parent of the minor; or
> >
> > (ii) By any other person who is an adult, who is a resident of the state of Wyoming, and in the case of married persons maintaining a home together, the petition shall be the joint petition of husband and wife, except that if one of the spouses be the natural parent of the child to be adopted, such natural parent shall not be required to joint in the petition. . . .

1973 Wyo. Sess. Laws, ch. 91, § 1.

[¶37]   The word "single" was added in 1977, when the adoption statutes were amended as follows:

> 1-726.3 **Adopting parties**.   Any adult person residing in Wyoming and found by the court to be fit and competent to be a parent may adopt in accordance with this act.

14

1-726.4 **Petition for adoption of minor; by whom filed; requisites; confidential nature; inspection; separate journal to be kept.**

> (a) Adoption proceedings shall be commenced by petition filed in district court.
>
> (b) A petition may be filed by any single adult or jointly by a husband and wife who maintain their home together, or by either the husband or wife if the other spouse is a parent of the child. . . .

1977 Wyo. Sess. Laws, ch. 187, § 1. For almost a century, the adoption statutes used words such as "any person," "any natural person," and "any other person" when discussing who could file an adoption petition, other than a husband and wife maintaining their home together. We "presume the legislature enacts statutes with full knowledge of the existing condition of the law and with reference to it." *Almada v. State*, 994 P.2d 299, 306 (Wyo. 1999). Therefore, the legislature's choice to amend the statute to read "any single adult" was intentional, and it must be treated as such. Additionally, the legislature continued to require a husband and wife who maintain their home together to file a joint petition.

[¶38] This Court will not "enlarge, stretch, expand, or extend a statute to matters which do not fall within its express provisions." *Gray v. Stratton Real Estate*, 2001 WY 125, ¶ 5, 36 P.3d 1127, 1128 (Wyo. 2001) (quoting *Bowen v. State, Wyo. Real Estate Comm'n*, 900 P.2d 1140, 1143 (Wyo. 1995)). Further, we are not at liberty to rewrite a statute under the guise of statutory interpretation. *Jones v. State*, 2001 WY 28, ¶ 13, 18 P.3d 1189, 1194 (Wyo. 2001). This Court "cannot supply omissions in a statute and will not read into a statute exceptions not made by the legislature." *Lo Sasso v. Braun*, 386 P.2d 630, 631–32 (Wyo. 1963.)

[¶39] The majority acknowledges that our previous cases have held that adoption statutes should be strictly construed. *See, e.g.*, *Matter of Adoption of ZEM*, 2020 WY 17, ¶ 11, 458 P.3d 21, 24 (Wyo. 2020) (quoting *In re Adoption of AMP*, 2012 WY 132, ¶ 11, 286 P.3d 746, 749 (Wyo. 2012)). However, the majority appears to create a different standard when a case does not involve a nonconsenting parent, such as this one. The majority contends that we should interpret the "objective purpose" of the adoption statutes, and construe them "in a manner which will promote this purpose" as espoused in *In the Matter of the Adoption of MAJB*, 2020 WY 157, ¶¶ 21–22, 478 P.3d 196, 203–04 (Wyo. 2020).[10] The effect of

---

[10] Further, I would note that *MAJB* specifically stated that the case did not involve "the failure to comply with statutory procedures." *Id.* ¶ 23, 478 P.3d at 204. Therefore, its discussion of "objective standards" and "liberal construction" should not apply to a case that directly involves the failure to comply with statutory procedures.

this approach is to substitute this Court's opinion of what a policy should be for that of the legislature. We have long recognized:

> Courts are not at liberty to impose their views of the way things ought to be simply because that's what must have been intended, otherwise no statute, contract or recorded word, no matter how explicit, could be saved from judicial tinkering. Moreover, if the sense of a word is not to be taken in its usual and commonly understood meaning except under circumstances where a different meaning is clearly intended, it becomes impossible for men to mean what is said or say what they mean and purposeful communication is unattainable.

*Markle v. Williamson*, 518 P.2d 621, 625 (Wyo. 1982) (quoting *Kilpatrick v. Superior Court*, 105 Ariz. 413, 466 P.2d 18, 27 (1970)).

[¶40]   In this case, KA is a husband who maintains his home with his wife, who is not the Child's mother. Therefore, he is not a "single adult," and he is currently ineligible to file an individual petition to adopt the Child. He could have adopted the Child when he was married to the Child's mother, and he can adopt the Child once the Child attains the age of majority, as long as the Child consents to the adoption. *See* Wyo. Stat. Ann. § 1-22-102(b). This Court is not permitted to rewrite or expand the statute to solve whatever temporary hardship may be imposed by denying the adoption at this time. If the legislature wants to permit adoptions in circumstances such as those currently before the Court, it is free to do so. Until that time, this Court must apply the statute as it is written. I believe the majority's focus on the term "single" considering the context of the remainder of the statute is misplaced. The petitioner is a married person maintaining a home with his spouse. The statute requires a joint petition by both husband and wife in this situation. There was no joint petition in this case.

[¶41]   The majority appears to create a less exacting promotion of purpose standard of review under some circumstances while acknowledging a longstanding strict scrutiny review under other circumstances. Furthermore, the majority interpretation, essentially allowing any person to pursue an adoption, renders not only the other statutory provisions meaningless but also the term "single."

[¶42]   For the reasons stated above, I would find that "single" refers to marital status. The majority acknowledges that "if the legislature intended 'single adult' to mean 'unmarried adult' then KA cannot petition to adopt the child." Therefore, I would find that the district court correctly denied the adoption petition, and I would affirm the district court's order.

16